**Nicholas LASORSA, Petitioner,**

v.

**Philip M. SPEARS, Respondent.**

**No. 97Civ.4827(SS)(RLE).**

United States District Court, S.D. New York.

May 1, 1998.

do they say that Nobel agrees to be surety only for Hudson.

Joyce C. London, New York City, for petitioner.

Mary Jo White, United States Attorney, New York City, Irene Chang, for Respondent.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Petitioner Nicholas LaSorsa, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his continued incarceration by the Federal Bureau of Prisons (BOP) pursuant to a 1994 conviction in the Southern District of New York. LaSorsa seeks an order requiring BOP to credit him with a one year sentence reduction, pursuant to 18 U.S.C. § 3621(e)(2)(B), for having completed a substance abuse treatment program. On September 18, 1997, this Court referred respondent's motion to dismiss the petition to Magistrate Judge Ronald L. Ellis, who filed a Report and Recommendation on March 11, 1998 (the "Report"), recommending that this Court find BOP's denial to be based on an erroneous interpretation of law and ordering BOP to reconsider the petitioner's request for sentence reduction under the correct legal standard.

The United States filed timely objections to the Report on March 27, 1998. This Court, having reviewed the Report and the government's objections, and having conducted a *de novo* review of the record, effectively accepts the recommendation of Magistrate Judge Ellis with modifications as noted herein. However, because much of the case law on this subject elides a critical distinction between BOP's discretionary powers under § 3621(e) and its ability to interpret statutes and regulations, the Court wishes to expound more than usual on the Magistrate Judge's thorough and thoughtful Report.

### BACKGROUND

The complete facts of this case are recounted in the Report of Magistrate Judge Ellis. Briefly, LaSorsa pled guilty to possession with intent to distribute heroin, in violation of 21 U.S.C. § 841, and using and carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

The firearm in question, a semi-automatic handgun, was found in a search of LaSorsa's residence, as was the heroin. On May 11, 1994, LaSorsa was sentenced to two consecutive terms of sixty months' imprisonment. LaSorsa's § 924(c) conviction was subsequently vacated following the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and LaSorsa was resentenced to seventy-eight months on the § 841 count, the new sentence including a two-level, eighteen-month enhancement for possession of a dangerous weapon under United States Sentencing Guidelines § 2D1.1(b)(1).

While incarcerated at F.C.I. Marianna, Florida, LaSorsa entered and completed a five hundred hour substance abuse program, graduating on June 5, 1996. LaSorsa immediately applied for a one-year sentence reduction under 18 U.S.C. § 3621(e)(2)(B). At the first level, LaSorsa's case manager denied the request because

> Per your PSI [Presentence Investigation Report] dated 10/16/1996 you received a two level enhancement for possession of weapon which was in your residence. This means you require notification of local law enforcement under the [VCCLEA].[1] See P.S. [Program Statement] 5162.02 p. 7 for definition of crimes of violence. This precludes you from being eligible for consideration of one year off.

Petition, Ex. B. LaSorsa diligently exhausted the entire administrative appeal system at BOP, being denied at each level essentially for the same reason—that under P.S. 5162.02 he was convicted of a "crime of violence" and was therefore ineligible for release.

LaSorsa then filed this habeas petition under 28 U.S.C. § 2241, contending that § 3621(e)(2)(B) entitled him to the sentence reduction and that therefore his continued incarceration (now at F.C.I. Otisville, New York) was in violation of federal law. Following referral by this Court, Magistrate Judge Ronald L. Ellis issued his Report. Magistrate Judge Ellis found, in essence, the following: (1) 18 U.S.C. § 3621(e)(2)(B) made

eligible for sentence reduction those prisoners convicted of nonviolent offenses; (2) BOP's regulation interpreting this statute, 28 C.F.R. § 550.58, defined "nonviolent offense" as an offense not covered by the definition of "crime of violence" found in 18 U.S.C. § 924(c)(3); (3) BOP's Program Statement 5162.02, defining "crime of violence" to include LaSorsa's drug possession offense was contrary to clear case law interpreting § 924(c)(3) and therefore an invalid interpretation of the regulation; (4) BOP nevertheless maintained discretion under § 3621(e)(2)(B) to determine which eligible prisoners received the sentence reduction, and (5) therefore, BOP should be ordered to reconsider LaSorsa's request for sentence reduction under a proper interpretation of § 924(c)(3).

The government objects to the Report on the ground that BOP's Program Statement is a permissible interpretation of both the statute and the regulation.

## DISCUSSION

### I. *The Statutory Framework*

I begin with the statute which underlies the early release program upon which LaSorsa relies. Title III of the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"), Pub.L. No. 103–322, gave BOP the authority to release certain prisoners who have completed a BOP substance abuse treatment program. In relevant part, the statute reads as follows:

> (e) Substance abuse treatment.—
>
> . . .
>
> (2) Incentive for prisoners' successful completion of treatment program.—
>
> . . .
>
> (B) Period of custody.—The period a prisoner *convicted of a nonviolent offense* remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

---

1. Section 20417(5) of the VCCLEA requires BOP to notify local law enforcement authorities of the release of prisoners who were convicted of, inter

alia, a "crime of violence" as defined by 18 U.S.C. § 924(c)(3). *See* 18 U.S.C. § 4042(b).

18 U.S.C. § 3621(e) (emphasis added). The emphasized portions are the subject of the dispute at issue in this habeas petition.

■ LaSorsa contends that, because he was not convicted of a violent offense, he is eligible for early release under § 3621(e)(2)(B). "Eligible" he may be, but as noted by Magistrate Judge Ellis and saliently put by the Seventh Circuit, "eligibility is not entitlement." *Bush v. Pitzer,* 133 F.3d 455, 457 (7th Cir.1997). As far as the statute is concerned, BOP retains discretion over early release along at least two axes: (1) which nonviolent offenders will have their sentences reduced, and (2) how long these sentence reductions will be.

The plain language of § 3621(e)(2)(B) states only that the sentences of nonviolent offenders who have completed a treatment program "may be reduced by the Bureau of Prisons," not that they *must* be. The statute unambiguously precludes the release of violent offenders, and just as unambiguously places no other criteria on whom BOP chooses to release.[2]

The Supreme Court has construed similar legislative enactments to be virtually unfettered grants of discretion—i.e., there appears to be no canon of statutory construction that when discretion is granted with limits, Congress intends *only* those limits to apply. In *INS v. Yang,* 519 U.S. 26, 117 S.Ct. 350, 136

---

**2.** The legislative history of this program's enactment as part of the VCCLEA also indicates that the "convicted of a nonviolent offense" language was intended only to preclude BOP from releasing violent offenders, not to create mandatory release for nonviolent offenders. As introduced in both the House and Senate, the early release provisions contained no limitations at all on BOP's discretion:

> (A) GENERALLY.—Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment ... shall remain in the custody of the Bureau *for such time* (as limited by subparagraph (B) of this paragraph) and under such conditions, *as the Bureau deems appropriate,* ...
>
> (B) PERIOD OF CUSTODY.—The period a prisoner remains in custody after successfully completing a treatment program shall not exceed the prison term the law would otherwise require such prisoner to serve, but may not be less than such term minus one year.

H.R.3350, 103d Cong. § 1 (passed by House Nov. 3, 1993) (emphasis added); *see* 139 Cong. Rec. H8723 (daily ed. Nov. 3, 1993). (The provisions of H.R.3350 were subsequently incorporated into the version of the VCCLEA which went to conference committee with the Senate.) *See also* S.1607, 103d Cong. § 1304 (introduced in Senate Nov. 1, 1993) (identical language).

The House Judiciary Committee Report which accompanied H.R.3350 described the operation of the early release provision: "In effect, this subparagraph authorizes the Bureau of Prisons to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, *based on criteria to be established and uniformly applied by the Bureau of Prisons.*" H.R.Rep. 103–320 (1993) (emphasis added). The floor debates in the House also make it clear that substantial discretion was intended. Both the chair and the ranking member of the Crime and Criminal Justice Subcommittee of the House Judiciary Committee stressed, in response to concerns over the early release program, that release was not guaranteed but was up to BOP. *See* 139

Cong.Rec. H8728 (daily ed. Nov. 3, 1993) (statement of Rep. Schumer) ("[T]his is not mandatory time off, it is an option, up to the prison authorities."), 139 Cong.Rec. H8724 (daily ed. Nov. 3, 1993) (statement of Rep. Sensenbrenner) ("[T]hat is in the discretion of the Bureau of Prisons on whether or not the prisoner's term ought to be reduce [sic] upon completion of the program.").

The Senate amended its version of the bill to change the language in paragraph (B) from "prisoner" to "a prisoner convicted of a nonviolent offense" without discussion. *See* 139 Cong. Rec. S15030–70 (daily ed. Nov. 11, 1993). However, when the House and Senate went to conference, the House agreed to the "nonviolent offense" limitation, and the conference report stated only that the House version was being amended "to limit the early release incentive for successful program completion to non-violent offenders." H.R.Conf.Rep. 103–694 (1994). There is no indication whatsoever that BOP's discretion to release nonviolent offenders was also being curtailed.

Moreover, Congress placed the early-release program provisions in Chapter 229, Subchapter C of Title 18, United States Code, thereby bringing the provisions within the sweep of 18 U.S.C. § 3625. Section 3625 renders inapplicable to any "determination, decision, or order under [subchapter C]" the provisions of the Administrative Procedure Act requiring on-the-record hearings and subjecting those determinations, decisions, or orders to judicial review. As stated when Congress passed § 3625 in 1984, this provision is intended to insulate BOP decisions regarding individual prisoner placement, discipline, and now—with the passage of the VCCLEA—early release for drug treatment, from judicial "second-guessing." S.Rep. 98–225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182. Again, by placing the early-release provisions in this subchapter, Congress made it clear that BOP's discretion to release individual prisoners was to be broad indeed.

L.Ed.2d 288 (1996), the Court was called upon to construe the provisions of the Immigration and Nationality Act (INA) which allow the Attorney General (or in this case, her designate, the Immigration and Naturalization Service) the discretion to waive deportation of those aliens who are deportable solely on the grounds that they were excludable at entry because of fraudulent documentation. *See* 8 U.S.C. § 1251(a)(1)(H) (1996).[3] The petitioner in *Yang* argued, in effect, that because the INA made those excludable solely for entry fraud eligible for the exercise of the Attorney General's discretion, the Attorney General was forbidden from considering entry fraud at all in its determination of whether to exercise that discretion.

A unanimous Supreme Court roundly rejected that position. The Court first stated that "the meaning of this language [§ 1251(a)(1)(H) ] is clear. While it establishes certain prerequisites to eligibility for a waiver of deportation, it imposes no limitations on the factors that the Attorney General ... may consider in determining who, among the class of eligible aliens, should be granted relief." *Yang*, 117 S.Ct. at 352. Contrasting the statute with a previous version of the INA under which the Attorney General had no discretion to waive deportation if the statutory requirements were met, the Court held that "satisfaction of the requirements under § 1251(a)(1)(H) ... establishes only the alien's eligibility for waiver. Such eligibility in no way limits the considerations that may guide the Attorney General in exercising her discretion to determine

who, among those eligible, will be accorded grace." *Id.* at 353.

The only limitation alluded to, in dictum, was that if the Attorney General considered *all* entry fraud, no matter how minor, as preventing waiver, she would in effect be refusing to exercise her discretion completely, thus rendering the statute a nullity. The Court hinted that this might be impermissible, but that it was "a far cry" from preventing consideration of entry fraud at all, a position the Court described as "untenable." *Id.*

Petitioner here makes virtually the same argument as the petitioner in *Yang*, and it fails for the same reason. 18 U.S.C. § 3621(e)(2) establishes two conditions which a prisoner must be meet in order to be eligible for early release at all—namely, completion of a substance abuse treatment program and conviction of a nonviolent offense. Such eligibility, however, "in no way limits the considerations that may guide" the Bureau of Prisons in determining who will be released. With the possible limitation that BOP may not set so many restrictions as to render the statute effectively inoperative, BOP is free to consider anything—including the nature of the offense and the circumstances surrounding it (even if not elements of the conviction)—it deems relevant to best effectuate the goals of the program.[4]

Thus, although BOP may not release violent offenders, it has virtually complete discretion otherwise. It certainly has, under the statute, the ability to deny early release

---

3. 8 U.S.C. § 1251 was subsequently redesignated as 8 U.S.C. § 1227. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, § 305(a)(2), 110 Stat. 3009, 3009–597 to 3009–598 (1996). The statute as construed in *Yang* provided, in relevant part, as follows:

> The provisions of this paragraph relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens described in section 1182(a)(6)(C)(i) of this title [who have obtained a visa, documentation, entry or INA benefit by fraud or misrepresentation] ... may, in the discretion of the Attorney General, be waived for any alien ... who—
> (i) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien

lawfully admitted to the United States for permanent residence; and
> (ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility specified under paragraphs (5)(A) and (7)(A) of section 1182(a) of this title [relating to possession of valid labor certifications, immigrant visas and entry documents] which were a direct result of that fraud misrepresentation.

*Yang*, 117 S.Ct. at 352 (quoting 8 U.S.C. § 1251(a)(1)(H) (1996)).

4. Of course, BOP is not free to rely on unconstitutional factors—for example, a prisoner's race, sex, or religion. No such claim of unconstitutionality has been raised in this case, however.

to prisoners, the attendant circumstances of whose convictions involved weapons possession, as did LaSorsa's, even though they were not convicted of a weapons offense. It is important to realize, however, that such considerations are proper not as an exercise in statutory interpretation by BOP—i.e., not as a matter of defining the phrase "convicted of a nonviolent offense" under § 924(c)(3)—but rather as an exercise of the discretion granted by the statute to determine who, among those convicted of a nonviolent offense, will be given early release.

It bears noting that it is this distinction which some of the case law from other circuits fails to clearly articulate. Much of the case law is extensively discussed by Magistrate Judge Ellis in his Report, and need not be reiterated here. The Court will only note a case heavily relied upon by petitioner, *Downey v. Crabtree*, 100 F.3d 662 (9th Cir. 1996). In *Downey*, the Ninth Circuit found, as did Magistrate Judge Ellis and as does this Court *infra*, that prisoners, like LaSorsa, who were convicted of drug trafficking offenses but received sentence enhancements for weapons possession are "prisoners convicted of a nonviolent offense" under the statute and regulation. However, where the Magistrate Judge, along with this Court, parts company with *Downey* is in that Court's apparent failure, as evidenced by its granting of the writ, to realize that while BOP does not have discretion to define these prisoners as "violent offenders," BOP does have discretion nonetheless to deny early release. The Court believes this distinction bears further discussion.

## II. *The Regulation*

 The Bureau of Prisons has also issued regulations implementing the early-release program. Although BOP has unfettered discretion under the statute, regulations issued have the force of law and may

limit BOP's own discretion further than the statute does. The Court must therefore analyze the regulation to see if BOP has done so.[5]

In 1995, BOP first promulgated 28 C.F.R. § 550.58.[6] The version that was in effect both at the time LaSorsa was denied release and when he filed this habeas petition read as follows:

> 550.58 Consideration for early release.
>
> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, in accordance with paragraph (a) of this section, unless the inmate is an INS detainee, a pretrial inmate, a contractual boarder (for example, a D.C., State, or military inmate), or eligible for parole, or unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3), or unless the inmate has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault.

Drug Abuse Treatment Programs: Early Release Considerations, 60 Fed.Reg. 27692, 27695 (May 25, 1995). The Supplementary Information in the Federal Register notice stated that "In keeping with the statutory provision that possible reduction in sentence is applicable to an inmate convicted of a nonviolent offense, an inmate whose current offense falls under the definition in 18 U.S.C. § 924(c)(3) of a crime of violence is excluded from consideration." The notice then goes on to list the other factors which will exclude a prisoner from consideration (such as prior convictions for homicide, forcible rape, robbery, or aggravated assault), but describes these factors as an "exercis[e][of] the Bureau's discretion in reducing a sentence."

---

**5.** The Court notes that 18 U.S.C. § 3625 does not exempt BOP regulations, as opposed to adjudications, from the provisions of the Administrative Procedure Act requiring notice-and-comment rulemaking procedures and subjecting promulgated regulations to judicial review. *See, e.g., Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir.1998). Although this is a habeas petition, not a suit under the APA, the APA provides that in the absence of any special statutory review pro-

ceeding (and there is none applicable here), review may be had in "any applicable form of legal action, including actions for ... writs of ... habeas corpus, in a court of competent jurisdiction." 5 U.S.C. § 703.

**6.** BOP has since revised 28 C.F.R. § 550.58. *See* 62 Fed.Reg. 53690 (Oct. 15, 1997). The significance of this revision will be further discussed in the text.

■ It is fairly clear, therefore, that BOP's promulgation of this regulation was intended to do two things: (1) as a matter of statutory interpretation, to define "prisoner convicted of a nonviolent offense" in § 3621(e)(2)—i.e., the type of prisoner BOP is forbidden to release early—to mean a prisoner whose "current offense" does not meet the definition of "crime of violence" in 18 U.S.C. § 924(c)(3), and (2) to lay out certain criteria under which BOP would categorically refuse to exercise its discretion to grant early release. The first of these—the only part of the regulation implicated by this case—is well within BOP's statutory authority.[7]

BOP's decision to define "nonviolent offense" as a crime other than those defined by 18 U.S.C. § 924(c)(3) as "crimes of violence" was eminently rational. Congress did not define "nonviolent offense," but it can hardly be gainsaid that the best definition of "nonviolent offense" is "an offense other than one of violence." Technically speaking, because § 924(c)(3) specifically limits its definition to subsection 924(c), it makes more sense to reference 18 U.S.C. § 16, which defines "crime of violence" in the general definitions section of Title 18 and is presumably directly applicable. However, the definitions are virtually identical, and any differences are irrelevant to this case.[8]

Furthermore, the definition laid out in § 924(c)(3) was specifically referenced as the definition of "crime of violence" in another part of the VCCLEA, although the Court also notes that the interpretive power of this observation is questionable considering that there are at least five different definitions of "crime of violence" included in the VCCLEA. *See* VCCLEA, Pub.L. No. 103–322, § 20417(5) (adding 18 U.S.C. § 4042(b), defining "crime of violence" for purposes of BOP release notification requirements by reference to § 924(c)(3)); *cf.* VCCLEA Subtitle C, Civil Rights Remedies for Gender-

Motivated Violence Act, § 40302(d)(2), *codified at* 42 U.S.C. § 13981 (defining "crime of violence" with reference to 18 U.S.C. § 16); *but see* VCCLEA § 230101(b) (adding Fed. R.Crim.P. 32(f), defining "crime of violence" to include crimes that "involved the use or attempted or threatened use of physical force against the person or property of another"); VCCLEA § 240002(c) (defining "crime of violence" against the elderly by reference to specific sections of Title 18); *cf.* VCCLEA § 320916(a) (adding 28 U.S.C. § 540A(c), defining "felony crime of violence" as "an offense punishable by more than one year in prison that has as an element the use, attempted use, or threatened use of physical force against the person of another"). Assuming that Congress's use of the term "nonviolent offender" was ambiguous, BOP's incorporation of § 924(c)(3)'s definition of "crime of violence" is certainly a "permissible construction of the statute." *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

■ The regulation, as noted, goes further than the statute in limiting BOP's ability to grant early release—e.g., prisoners who have prior convictions for certain violent crimes are apparently eligible under the statute, but made ineligible by the regulation. However, the regulation, like the statute, does not purport to set out an exhaustive list of factors which BOP will consider. That is, while the regulation lists additional categories of prisoners who are ineligible, it does not state that all other prisoners will automatically be granted release. Rather, the regulation, as the statute does, still leaves BOP with complete discretion to determine who among eligible prisoners will be granted early release, and for how long. *See* 28 C.F.R. § 550.58 (1995) ("An inmate who completes a residential drug abuse treatment program ... *may*

---

7. The Court expresses no opinion as to the propriety of the discretionary categories listed in § 550.58.

8. 18 U.S.C. § 16(a) defines crime of violence to include "an *offense* that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," while § 924(c)(3)(A) only includes *felonies* with these elements. Thus, for example, the simple

assault of a federal officer under 18 U.S.C. § 111, which is punishable only up to one year and is therefore a Class A misdemeanor under 18 U.S.C. § 3559(a), would appear to be a crime of violence under § 16(a) but not under § 924(c)(3)(A). Because LaSorsa's conviction was for a felony, any difference is irrelevant and would in any case only work to LaSorsa's detriment, BOP's definition of "crime of violence" being, if anything, underinclusive.

*be eligible* for early release by a period *not to exceed* 12 months....") (emphasis added); *see also Wirth v. Menifee,* No. 97 Civ. 8862, 1998 WL 106136, at \*4, 1998 U.S.Dist. Lexis 2670, at \*13 (S.D.N.Y.1998) ("The BOP's implementing regulations ... make the grant of early release to a qualifying inmate discretionary rather than mandatory").

### III. *The Program Statements and the Reasons for LaSorsa's Denial*

In order to assist individual wardens in the implementation of the early release program, BOP also issued Program Statement (P.S.) § 5162.02, entitled "Definition of Term, Crimes of Violence," on July 24, 1995. The Program Statement stated its purpose as follows:

> To implement various portions of the [VCCLEA] that make reference to "nonviolent offense," and "crime of violence," specifically, ... Section 32001, *Substance Abuse Treatment in Federal Prisons.* This Program Statement defines "crime of violence" as that term is used in these section of the VCCLEA.

PS 5162.02, ¶ 1. The Program Statement then goes on to quote the definition of "crime of violence" in 18 U.S.C. § 924(c)(3), consistent with 28 C.F.R. § 550.58. *See* P.S. 5162.02 ¶ 5.

The Program Statement divides criminal offenses into four categories: (1) "criminal offenses that are crimes of violence in all cases"; (2) "criminal offenses that may be crimes of violence depending on the base offense level assigned"; (3) "criminal offenses that may be crimes of violence depending on the specific offense characteristic assigned"; and (4) "criminal offenses that may be crimes of violence depending on a variety of factors." For categories 2 and 3, BOP personnel were instructed to examine the sentence imposed by the court and whether under the sentencing guidelines the court had found the offense involved violence. For category 4, and for those crimes committed prior to the Sentencing Guidelines effective date of November 1, 1987, personnel were instructed to review the presentence investigation (PSI) report to see if the surrounding facts warranted a finding of a "crime of violence." In all cases, however, the reference was to be made back to the definition of "crime of violence" found in § 924(c)(3). LaSorsa's conviction, for violating 21 U.S.C. § 841, fell into category 3.

On April 23, 1996, BOP issued Change Notice I (CN–01) to 5162.02 (and other program statements), its purpose being "to clarify the Bureau of Prisons' definition of 'crimes of violence'...." CN–01 ¶ 1. This new version of 5162.02 added the following example to category 3 crimes, which proved fatal to LaSorsa's claim for early release:

> *Example:* Section 841 of Title 21, United States Code makes it a crime to manufacture, distribute, or possess with the intent to distribute drugs. Under the Sentencing Guidelines (§ 2D1.1 and § 2D1.11) the defendant could receive and increase in his or her base offense level because of a "Specific Offense Characteristic," e.g., if a dangerous weapon was possessed during commission of the offense, the court would increase the defendant's base offense level by 2 levels. This particular "Specific Offense Characteristic" (possession of a dangerous weapon during the commission of a drug offense) poses a substantial risk that force may be used against persons or property. Accordingly, a defendant who has received a conviction for manufacturing drugs, (21 U.S.C. § 841) and receives a two level enhancement for possession of a firearm has been convicted of a "crime of violence."

CN–01, PS 5162.02 ¶ 9.

With the foregoing statutory, regulatory, and program statement framework in mind, it is clear that BOP's denial of LaSorsa's request for early release boils down to this: because LaSorsa received a two-level enhancement for weapons possession, BOP considered him to be convicted of a "crime of violence" as defined by 18 U.S.C. § 924(c)(3), and therefore ineligible for early release under 18 U.S.C. § 3621(e).

Now, it is important to note that the nature of this Court's review on habeas is different from what would be available under the APA. Were the APA's judicial review provisions applicable to BOP's decision to deny early release to LaSorsa, this Court would in effect be sitting as an appeals court,

reviewing the record of the BOP proceedings and determining whether, on that record alone, BOP's decision was supported by substantial evidence. However, as noted earlier, the APA is expressly made inapplicable to the review of BOP's decision by 18 U.S.C. § 3625.

Instead, a habeas petition is an independent inquiry into the legality of the prisoner's detention. *Cf. Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (district court in reviewing a habeas petition "does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*"). The Court is not limited to the record below, but instead takes its own evidence as necessary. *See* 28 U.S.C. § 2243, 2246. The inquiry is not, "Did BOP properly deny LaSorsa's request?" but rather, "Is LaSorsa's current detention illegal?"—the difference being, even if BOP's stated reasoning in its administrative process was flawed, as long as BOP's arguments to this Court on the habeas petition are sufficient to demonstrate the legality of their position, the habeas petition must be denied.

However, in this case, BOP, in its motion to dismiss and in its return to the petition, rather than offer an independent justification for LaSorsa's detention, has sought instead to defend the decision below, specifically by defending P.S. 5162.02. Thus, although the Court is not reviewing BOP's administrative denials or the validity of P.S. 5162.02 *per se,* the Court must construe the respondent's current position on LaSorsa's detention as being the same reason as that which was stated in those administrative denials. That is, BOP's defense of the legality of LaSorsa's detention—and the ground for its motion to dismiss the petition—is that his current offense is a "crime of violence" under § 924(c)(3) and is therefore ineligible for early release under § 3621(e). This position is contrary to the clear law of this and most other Circuits, and thus the motion to dismiss must be denied.

There is no question that the offense for which LaSorsa was convicted, 21 U.S.C. § 841, does not have "as an element the use, attempted use, or threatened use of physical force" so as to satisfy 18 U.S.C. § 924(c)(3)(A). Thus, any argument that La-

Sorsa was convicted of a crime of violence must be that drug trafficking in violation of 21 U.S.C. § 841, by its nature, involves a substantial risk of physical force so as to satisfy § 924(c)(3)(B). Such a conclusion is squarely foreclosed by *United States v. Diaz,* 778 F.2d 86, 87–88 (2d Cir.1985), in which the court held that "while the traffic in drugs is often accompanied by violence, it does not by its nature involve substantial risk that physical violence will be used.... [N]arcotics offenses do not constitute crimes of violence within the meaning of § 924(c)." *Id.* at 88.

BOP's response to this is twofold. First, BOP makes the novel—and specious—argument that when adopting § 550.58, it "did not intend ... to adopt any of the case law that courts had developed in interpreting Section 924." Motion to Dismiss, at 9 n. 8. If this were the case, BOP was obligated to say so. An agency cannot promulgate a regulation whose meaning is plainly apparent and then claim that it secretly meant something else, the "true" meaning to be revealed to the public at the agency's pleasure. BOP may not have had to incorporate § 924(c)(3) to define "nonviolent offense," but having done so, it is obliged to follow the case law interpreting that provision. *See, e.g., Roussos v. Menifee,* 122 F.3d 159, 163 (3d Cir. 1997) (BOP's importation of § 924(c)(3) makes reference to that statute's "large body of interpretive case law" appropriate); *accord Wiggins v. Wise,* 951 F.Supp. 614, 619 (S.D.W.Va.1996). Whatever "great deference" BOP thinks is due its interpretation of § 550.58, it does not go that far.

BOP relies on *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), for the proposition that an agency's interpretation of its own regulations is entitled to "controlling weight." This quote in its entirety reads as follows: "[P]rovided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation,'" *Id.* at 45, 113 S.Ct. at 1919 (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). BOP's interpretation of § 924(c)(3), however, incorporating LaSorsa's offense within the definition of

"crime of violence," is plainly erroneous under this Circuit's case law.

BOP's second argument is that, because it has broad discretion under § 3621(e) to determine which prisoners are granted early release, it has the discretion to interpret the statutory and regulatory language in its chosen way. This argument misses a crucial distinction. BOP does have broad discretion to determine which, among the class of "prisoners convicted of a nonviolent offense," will be granted early release and for how long (up to one year). BOP does *not*, however, have the "discretion" to interpret "prisoners convicted of a nonviolent offense" and "crimes of violence" under § 924(c)(3) in whatever way it chooses. These are statutory and regulatory terms whose meaning is quite clear, to the extent BOP has its own definitions of these terms, these interpretations are not permissible exercises of discretion but are instead statutory interpretations by an agency to which this Court owes some deference only if not contrary to the statute's clear meaning. BOP's interpretation of § 924(c)(3) is contrary to the statute's clear meaning as established in this Circuit by *Diaz.*

The simple truth of the matter is that if BOP had responded to LaSorsa's petition not by insisting on its "discretion" to define LaSorsa's offense as a "crime of violence" under § 924(c)(3), but rather by stating that BOP is denying LaSorsa early release as an exercise of its discretion to determine who, among those prisoners otherwise eligible under § 3621(e) and § 550.58, it chooses to release, the petition would have to be denied without further discussion. BOP clearly recognizes this, as evidenced by the fact that a recently promulgated change to § 550.58 removes all reference to § 924(c)(3) and instead terms its rules excluding prisoners such as LaSorsa from early release "an exercise of the discretion vested in the Director of the Federal Bureau of Prisons." 62 Fed.Reg. 53690, 53691 (Oct. 15, 1997). The revised Program Statement, 5162.04, also instructs BOP officials that "if an inmate is convicted of an

offense listed in Section 7 [corresponding to previous section 9 of 5162.02], the inmate should be denied a program benefit because he or she committed an offense identified at the Director's discretion, rather than a crime of violence." PS 5162.04, ¶ 5.

However, on this motion to dismiss, not only has BOP chosen to rely solely on its argument that it is free to define LaSorsa's offense as a "crime of violence," BOP has gone so far as to disclaim any applicability of the new regulation and program statement to this case. It is far from clear to this Court that there is any principle of law which forbids BOP from applying this new regulation to LaSorsa, nor does there appear to be any reason why a program statement, which is simply an internal operating guideline that in no way binds BOP and can be changed by the Director at will, could not be used.[9] Be that as it may, BOP has chosen to insist on its right to define LaSorsa's offense as a crime of violence under § 924(c)(3) rather than to rely on its virtually unlimited discretion to create additional criteria for release, and in doing so effectively disclaimed the only basis for granting its motion to dismiss.

This distinction is more than a semantic or technical one. The definition of an offense as a "crime of violence" under § 924(c)(3) carries with it other ramifications. For instance, under 18 U.S.C. § 4042(b)(3)(B), BOP is required to notify local law enforcement agencies of the impending release of a prisoner convicted of a crime of violence as defined in § 924(c)(3). In this circuit at least, BOP has no "discretion" to define LaSorsa's offense for reporting purposes as a crime of violence. (In this case, LaSorsa was, however, convicted of a drug trafficking crime and thus is subject to mandatory reporting under § 4042(b)(3)(A). However, the distinction could be important in other cases.)

More importantly, if BOP is denying LaSorsa (and others) early release solely because it believes him to be ineligible for release under § 3621(e) and § 550.58, BOP's error of law may be all that is standing between otherwise eligible prisoners and a

---

**9.** The Court also wishes to specifically note that it does not adopt the Magistrate Judge's dictum that the new version of § 550.58, which makes ineligible prisoners "serving a term of imprisonment for a crime of violence or a felony offense that involved the carrying, possession, or use of a firearm" does not encompass LaSorsa's offense. *See* Report and Recommendation, at 15–16. The Court need not reach that issue.

favorable decision on their early release, and thus the error must be corrected. As noted above and as will be discussed further shortly, however, correcting this error of law does not entitle LaSorsa to release automatically. BOP retains significant discretion to deny early release even once its erroneous view of the law is righted.

In sum, BOP has asked this Court to dismiss LaSorsa's petition on the ground that LaSorsa's offense was a "crime of violence" under 18 U.S.C. § 924(c)(3) and therefore, he is ineligible for release under 28 C.F.R. § 550.58. This conclusion being contrary to clear case law in this Circuit, the motion to dismiss must be denied.

## IV. *Further Proceedings*

The motion to dismiss having been denied, there remains the question of what further proceedings are necessary on the petition itself. BOP filed a return to the petition on September 5, 1997. This return references the motion to dismiss, and states the following:

> [T]his petition should be dismissed on the ground that petitioner's early release was not mandated and the denial of his eligibility for early release under 18 U.S.C. § 3621(c)(2)(B), as implemented and interpreted by the Federal Bureau of Prisons at 28 C.F.R. § 550.58 and BOP Program Statement 5162.02, was a permissible exercise of discretion. Specifically, petitioner was denied eligibility for early release based on the fact that his sentence had been enhanced due to his possession of a dangerous weapon in connection with his offense and thereby fell within the categories of violent offenders ineligible for early release based on Program Statement 5162.02(9).

Return, ¶¶ 2–3. In light of the foregoing discussion, the meaning of this return is ambiguous. Although it refers to BOP's "exercise of discretion," its reliance upon § 550.58 and 5162.02 and the motion to dismiss reads as arguing that LaSorsa is not being released because he has been convicted of a crime of violence under § 924(c)(3) and is therefore ineligible under § 550.58 and § 3621(e), a position which this Court has rejected as a matter of law.

■ This Court has the power to dispose of the habeas petition "as law and justice require." 28 U.S.C. § 2243. It appears to the Court that the proper course is to allow BOP to file an amended return to the petition, for two reasons.[10] One, the ambiguity of the return makes it impossible for the Court to say that BOP has chosen to rely solely on its now-rejected § 924(c)(3) argument and waived all other grounds for asserting the legality of LaSorsa's continued detention. Second, to the extent BOP is denying LaSorsa's early release because it believes he is ineligible as a matter of law, BOP should now reconsider its decision in light of this Court's ruling to the contrary. However, the Court notes that, should BOP decide that it will continue to deny LaSorsa early release purely as an exercise of its discretion under § 3621(e) and § 550.58, it must submit competent evidence stating that as the reason—i.e., an affidavit or affirmation from a responsible official in BOP who has reconsidered this matter on the basis of the established law of this Circuit. Reliance on the previous administrative denials, based as they were on incorrect interpretations of the law, is insufficient.

### CONCLUSION

For the foregoing reasons, the Court DENIES respondent's motion to dismiss the habeas petition. The respondent is hereby given fifteen days from the date of this Order in which to file an amended return, accompanied by the necessary evidentiary support, stating reasons for LaSorsa's continued incarceration not inconsistent with this Opinion and Order.[11]

**SO ORDERED.**

---

**10.** Magistrate Judge Ellis had recommended a "remand" of the petition to BOP, with 20 days in which to redetermine LaSorsa's eligibility. In substance, this Court adopts that recommendation, but as noted earlier, this is a habeas peti-tion, not an administrative appeal, so there is technically nothing to "remand."

**11.** Petitioner had requested that any additional time for reconsideration given to BOP be only

one week. The petitioner's desire for speed is understandable, but the Court believes that fifteen days is the minimum reasonable time for BOP to reconsider its decision.