155 F.3d 470
 Robert Paul PELISSERO, Petitioner-Appellant,
v.
W.J. THOMPSON, Warden, FCI, Morgantown, WV, Respondent-Appellee.
Pamela Armour; Tamara Bayles; Sandra Lewis Cockrell;
Wonda Cortes; Marsha Poore Crawford; Mary Kathleen
Lobbins; Kim Lovvorn; Diane Mcnabb; Sharon Strauss;
Mildred Thompson; Lori Tuttle, Amici Curiae.
Aubra S. HAYES, Jr., Petitioner-Appellant,
v.
FEDERAL BUREAU OF PRISONS; Kathleen M. Hawk, Director of
the Bureau of Prisons, Respondents-Appellees.
 Nos. 97-6156, 97-6221.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 10, 1998.
Decided Sept. 3, 1998.
 
 ARGUED: James R. Fox, Jory & Smith, Elkins, WV, for Appellant. Bill David Burlington, Regional Counsel, Bureau Of Prisons, Butner, NC, for Appellee. ON BRIEF: William D. Wilmoth, U.S. Atty., Daniel W. Dickinson, Jr., Asst. U.S. Atty., Rita R. Valdrini, Asst. U.S. Atty., Wheeling, WV., for Appellee. Pamela Armour, Tamara Bayles, Sandra Lewis Cockrell, Wonda Cortes, Marsha Poore Crawford, Mary Kathleen Lobbins, Kim Lovvorn, Diane McNabb, Sharon Strauss, Mildred Thompson, Lori Tuttle, Amici Curiae Pro Se.
 Before WILKINS and NIEMEYER, Circuit Judges, and CHAMBERS, United States District Judge for the Southern District of West Virginia, sitting by designation.
 Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILKINS joined. Judge CHAMBERS wrote a dissenting opinion.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 Section 3621(e)(2)(B) of Title 18 of the United States Code provides that the prison terms of prisoners convicted of "nonviolent" offenses may be reduced by the Bureau of Prisons in an amount up to one year as an incentive for the prisoners' successful completion of a residential substance abuse treatment program. Although inmates Robert Pelissero and Aubra Hayes completed the specified substance abuse treatment program, the Bureau of Prisons denied them any reduction of their sentences, relying on its Program Statement No. 5162.02, which specifies that a prisoner convicted of, or whose sentence was enhanced for, possession of a firearm during the commission of a drug offense is convicted of a "crime of violence" and cannot have his sentence reduced under § 3621(e)(2)(B).
 
 
 2
 In separate petitions for a writ of habeas corpus filed under 28 U.S.C. § 2241, Pelissero and Hayes challenged the validity of Program Statement No. 5162.02, particularly its definition of "nonviolent offense." In each case, the district court upheld the Program Statement and denied the petition. For reasons somewhat different from those given by the district court, we affirm.
 
 
 3
 * As part of the Crime Control Act of 1990, Congress required the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Then in 1994, to provide an incentive to federal prisoners to enroll in and complete the Bureau of Prisons' drug treatment programs, Congress authorized the Bureau to reduce by up to one year the sentence of "a prisoner convicted of a nonviolent offense" who successfully completes a treatment program. 18 U.S.C. § 3621(e)(2)(B). While eligibility for early release under § 3621(e)(2)(B) is open to all prisoners who meet the statutory requirements, the statute expressly vests the Bureau of Prisons with broad discretion to grant or deny sentence reductions to eligible prisoners. See 18 U.S.C. § 3621(e)(2)(B) ("[T]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons") (emphasis added); see also Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir.1996) ("Section 3621(e)(2)(B) ... reflects unequivocal Congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug treatment program").
 
 
 4
 To interpret the statute, the Bureau of Prisons issued a regulation in May 1995 defining "nonviolent offense" as the converse of "a crime of violence." See 28 C.F.R. § 550.58 (1995). This 1995 regulation excluded from eligibility for early release under § 3621(e)(2)(B) those inmates whose "current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)." 28 C.F.R. § 550.58 (1995). Section 924(c)(3) of Title 18 in turn defines a crime of violence as any offense that is a felony and that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." In its request for comment, which accompanied the publication of Regulation 550.58, the Bureau of Prisons explained that "[i]nformation contained in the Presentence Investigation Report ordinarily is sufficient to allow staff to determine if the inmate's committed offense meets this definition of crime of violence." 60 Fed.Reg. 27692, 27692 (May 25, 1995).
 
 
 5
 To further assist case management staff in deciding whether an inmate qualifies for early release under 18 U.S.C. § 3621(e)(2)(B) and under implementing regulation 550.58, the Bureau of Prisons adopted Program Statement No. 5162.02 ("P.S.5162.02") in July 1995. The Program Statement offers an exhaustive list of offenses that the agency considers to be "crimes of violence." Section 7 of the Program Statement provides that "in all cases" a conviction under 18 U.S.C. § 922(g) constitutes a crime of violence. And Section 9 identifies other offenses "that may be crimes of violence depending on the specific offense characteristic assigned." Section 9 expressly provides that a defendant who has been convicted of a drug offense under 21 U.S.C. § 841 and who has received a two-level sentencing enhancement for gun possession has been convicted of a "crime of violence." The Program Statement explains that such possession "poses a substantial risk that force may be used against persons or property."
 
 
 6
 Because federal cases have held that possession of a firearm by a felon is not a crime of violence under 18 U.S.C. § 924(c), a split has developed among the circuits on the question of whether P.S. 5162.02 is a valid interpretation of the Bureau of Prisons' Regulation 550.58 or whether the Bureau of Prisons is bound by the case law interpreting the definition of "crime of violence" found in 18 U.S.C. § 924(c), which definition the Bureau of Prisons incorporated into its regulation. Compare, e.g., Venegas v. Henman, 126 F.3d 760, 763 (5th Cir.1997) (upholding P.S. 5162.02 as proper exercise of Bureau of Prisons' discretion "to determine what offenses, in context, are violent for purposes of Section 3621(e) and, therefore, not appropriate for exposure to the incentive of early release"), with Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir.1998) (Bureau of Prisons may not categorically deny early release under Section 3621(e)(2)(B) to inmates who receive two-level sentencing enhancement for firearm possession); Davis v. Crabtree, 109 F.3d 566, 570 (9th Cir.1997) (Bureau of Prisons "may not interpret the term 'nonviolent offense' to exclude the offense of felon in possession of a firearm").
 
 
 7
 To address the split among the circuits and clarify how the Bureau of Prisons intends to exercise its discretion granted under 18 U.S.C. § 3621(e)(2)(B), the Bureau adopted a revised Regulation 550.58 in October 1997. The revised regulation abandons its incorporation of the crime-of-violence definition from 18 U.S.C. § 924(c) and restates the Bureau's position held in P.S. 5162.02. It provides that an inmate who has been sentenced "for a nonviolent offense" and who "successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months." 28 C.F.R. § 550.58 (1997) (emphasis added). And paragraph (a) excludes those inmates from eligibility for early release "whose current offense is a felony" that "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives." 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). This 1997 revised regulation was issued after the notices of appeal in these cases were filed.
 
 II
 
 8
 Pelissero pled guilty to conspiracy to distribute and possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On August 23, 1991, the district court in the Western District of Pennsylvania sentenced him to 100 months imprisonment. This sentence included a two-level enhancement imposed pursuant to § 2D1.1 of the United States Sentencing Guidelines for possessing a firearm during the commission of these offenses. Hayes pled guilty to distribution of over five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and to possession of a handgun by a convicted felon, in violation of 18 U.S.C. § 922(g). On March 2, 1993, the district court in the Southern District of Ohio sentenced Hayes to two concurrent 84-month sentences of imprisonment. Both Pelissero and Hayes are currently incarcerated at the Federal Correctional Institution in Morgantown, West Virginia.
 
 
 9
 Pelissero completed a drug abuse treatment program conforming to the requirements of 18 U.S.C. § 3621(b) in May 1993, and Hayes completed a similar program in August 1995. Both, however, were denied reduction of their sentences under 18 U.S.C. § 3621(e)(2)(B) because they did not qualify for the reduction as that statute was interpreted by Bureau of Prisons' Program Statement No. 5162.02(7) & (9). Because Pelissero's sentence had been enhanced for possession of a firearm in connection with a drug offense and Hayes had been convicted of possession of a firearm by a convicted felon, both were deemed by the Bureau of Prisons to have been convicted of crimes of violence as defined in P.S. 5162.02.
 
 
 10
 After exhausting their administrative remedies, Pelissero and Hayes filed these petitions for habeas corpus under 28 U.S.C. § 2241, challenging the validity of P.S. 5162.02. The district court upheld the Program Statement's validity and denied the petitions, observing:The use of guns in connection with drug offenses clearly causes one of the most violent and deadly problems our society has to deal with today. It is entirely reasonable and certainly not arbitrary for the BOP to equate gun possession and drug dealing with violence, thus supporting its interpretation of not being a "nonviolent offense."
 
 
 11
 Pelissero v. Thompson, 955 F.Supp. 634, 636 (N.D.W.Va.1997). The court, accordingly, denied their petitions, and these appeals followed.
 
 III
 
 12
 Pelissero and Hayes contend that they were not convicted of crimes of violence within the meaning of 28 C.F.R. § 550.58 (1995) and 18 U.S.C. § 924(c)(3), the statute which is incorporated into the regulation. They note that the case law interpreting § 924(c) has held that drug trafficking accompanied by possession of a handgun does not meet the statute's definition of a crime of violence. See, e.g., United States v. Canon, 993 F.2d 1439, 1441 (9th Cir.1993) ("[P]ossession of a firearm by a felon is not a 'crime of violence' under § 924(c)"); United States v. Meyer, 803 F.2d 246, 249 (6th Cir.1986) (cocaine distribution offense, even when a firearm was present, does not constitute "crime of violence" for purposes of 18 U.S.C. § 924(c)). Accordingly, Pelissero and Hayes argue that P.S. 5162.02 is in conflict with the regulation and therefore is invalid. Additionally, they argue that P.S. 5162.02 is invalid because the Bureau of Prisons failed to follow the notice and comment requirements for agency rulemaking set forth in the Administrative Procedure Act, 5 U.S.C. § 553.
 
 
 13
 The contention of Pelissero and Hayes that P.S. 5162.02 is invalid has substantial support. See, e.g., Martin, 133 F.3d at 1079; Roussos v. Menifee, 122 F.3d 159, 163 (3d Cir.1997); Davis, 109 F.3d at 570; see also Fuller v. Moore, No. 97-6930, 133 F.3d 914, 1997 WL 791681, * 3 (4th Cir. Dec. 29, 1997) (per curiam) (unpublished). The district court in this case, however, concluded that the Bureau of Prisons is not bound by the case law interpreting 18 U.S.C. § 924(c) when implementing 18 U.S.C. § 3621(e)(2)(B). Rather, it concluded that as the agency given discretion by Congress to reduce the sentences of prisoners convicted of nonviolent crimes who have completed a prescribed drug treatment program, the Bureau of Prisons may adopt a reasonable interpretation of what a nonviolent crime is. This position also has support. See, e.g., Venegas, 126 F.3d at 763 (upholding P.S. 5162.02 as a legitimate exercise of the Bureau's discretion).
 
 
 14
 We are inclined to agree with the Fifth Circuit's opinion in Venegas and with the district court below that P.S. 5162.02 represents a valid exercise of the Bureau of Prisons' authority under 18 U.S.C. § 3621(e)(2)(B) to deny early release to inmates who, like Pelissero, received a sentence enhancement for firearm possession or who, like Hayes, were convicted of violating 18 U.S.C. § 922(g). We conclude, however, that this question is rendered largely moot in light of the Bureau of Prisons' revised regulation, 28 C.F.R. § 550.58 (effective October 9, 1997). This 1997 revised regulation was issued after these appeals were filed. The effect of the revised regulation essentially renders P.S. 5162.02 "irrelevant," at least in the context of the drug treatment statute. See Bush v. Pitzer, 133 F.3d 455, 458 (7th Cir.1997); Royce v. Hahn, No. 151 F.3d 116, 121-22 (3d Cir.1998) ("Cases analyzing the original regulation are now mostly of historical interest.").
 
 
 15
 The 1997 revised regulation abandons the use of the crime-of-violence definition from 18 U.S.C. § 924(c) while continuing the position that the Bureau of Prisons had taken in P.S. 5162.02, thus removing any ambiguity regarding the agency's position. The revised regulation clarifies the Bureau's position that inmates "whose current offense is a felony" which "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives" are disqualified from receiving the sentence reduction authorized under 18 U.S.C. § 3621(e)(2)(B). See 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). We must now determine whether the revised regulation applies to the case before us and, if so, whether it withstands the same challenges that Pelissero and Hayes leveled against P.S. 5162.02.
 
 IV
 
 16
 The 1997 revised regulation continues with the same interpretative position that the Bureau of Prisons has taken in this and other cases before the 1997 regulation's adoption. When the regulation became effective in October 1997, by its terms, it applied to any inmate sentenced under Subchapter D of 18 U.S.C. Chapter 227 who committed a nonviolent offense, who has a substance abuse problem, and who completes a drug treatment program. It does not except those who, like the petitioners here, requested a reduction under 18 U.S.C. § 3621(e)(2)(B) before the regulation was promulgated. See 28 C.F.R. § 550.58 (1997); 62 Fed.Reg. 53690 (Oct. 15, 1997). Thus, unless the new regulation violates the constitutional prohibition against ex post facto laws, see U.S. Const. art. I, § 9, its terms must be applied to the requests by Pelissero and Hayes for a reduction in their sentences under 18 U.S.C. § 3621(e)(2)(B).
 
 
 17
 The Ex Post Facto Clause provides, "No ... ex post facto Law shall be passed." This constitutional prohibition "applies only to penal statutes which disadvantage the offender affected by them." Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Specifically, the clause prohibits Congress from "retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts." Id. at 43, 110 S.Ct. 2715. Consequently, if the government enacted a regulation that increased the punishment for a crime after the crime had been committed, or, to the same effect, eliminated "gain time credits" to which a defendant was automatically entitled at the time of his crime, the Ex Post Facto Clause would be violated. See Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 898, 137 L.Ed.2d 63 (1997) (retroactive application of state law eliminating gain time credits "actually awarded" to petitioner "unquestionably disadvantaged the petitioner" in violation of the Ex Post Facto Clause); Weaver v. Graham, 450 U.S. 24, 35, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (finding unconstitutional a reduction of an inmate's gain time to which he was "automatically entitled ... for avoiding disciplinary infractions and performing his assigned tasks"); Plyler v. Moore, 129 F.3d 728, 734-35 (4th Cir.1997) (retroactive application of state law eliminating "mandatory release on furlough" for formerly eligible prisoners violated Ex Post Facto Clause); Jones v. Murray, 962 F.2d 302, 309-310 (4th Cir.1992) (inmate blood sampling law may not be enforced so as to deny early release to prisoners entitled to "automatic six-month reduction of sentence" prior to passage of law).
 
 
 18
 In this case, the 1997 revised version of 28 C.F.R. § 550.58 does not have the effect of making more onerous the punishments that were established at the time of the petitioners' offenses. The reduction of sentence afforded by § 3621(e)(2)(B) is not an automatic entitlement. Rather, it authorizes a reduction for qualifying inmates in the discretion of the Bureau of Prisons. See Bush, 133 F.3d at 457 ("Commission of a 'nonviolent offense' makes a prisoner eligible for consideration but does not require the Bureau to grant the boon he seeks. Eligibility is not entitlement."). The plain language of the statute "explicitly leaves sentence reductions to the discretion of the BOP." Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir.1998) (per curiam). Unlike the gain time credits at issue in Lynce and Weaver, or the early release provisions in Plyler and Jones, there is nothing mandatory about the reductions authorized by 18 U.S.C. § 3621(e)(2)(B). Furthermore, the 1997 revised regulation did not alter the Bureau of Prisons' interpretative position regarding its application of § 3621(e)(2)(B).
 
 
 19
 Moreover, when Pelissero and Hayes pleaded guilty to and were sentenced for their respective crimes, the reduction in sentence provision of the drug treatment statute had not yet been enacted; section 3621(e)(2)(B) was not enacted until 1994, well after both Pelissero and Hayes violated the criminal statutes for which they were sentenced in this case.
 
 
 20
 In short, by excluding petitioners from consideration for early release under § 3621(e)(2)(B), the 1997 revised regulation does not strip petitioners of anything to which they were previously entitled or which they previously had earned in violation of the Ex Post Facto Clause. See Bush, 133 F.3d at 458 ("Although the language of § 550.58 changed after the Bureau denied Bush's application for earlier release ... it did not change to his detriment").
 
 V
 
 21
 Even though we conclude that the 1997 revised version of 28 C.F.R. § 550.58 applies to Pelissero and Hayes, we must still determine whether it was a valid exercise of the Bureau of Prisons' discretionary authority granted under 18 U.S.C. § 3621(e)(2)(B). In Snowa v. Commissioner of Internal Revenue, 123 F.3d 190 (4th Cir.1997), we set forth the legal principles applicable to determining whether an agency regulation properly construes a statute:
 
 
 22
 First, we must determine whether the statute directly addresses the precise issue before us. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Second, if the statute is silent or ambiguous in expressing congressional intent, we must determine whether the agency's interpretation is based on a "permissible construction of the statute." Chevron, 467 U.S. at 843, 104 S.Ct. 2778.
 
 
 23
 123 F.3d at 195-96 (parallel and string citations omitted). Since 18 U.S.C. § 3621(e)(2)(B) is silent regarding the Bureau of Prisons' authority to deny early release to inmates who either received sentencing enhancements for firearm possession or were convicted of unlawfully possessing firearms, we proceed to decide whether 28 C.F.R. § 550.58 (1997) represents a "permissible construction of the statute." Again, on this question our decision in Snowa provides the guiding principles:
 
 
 24
 Our standard of review in determining whether an agency's regulation is valid depends on whether the regulation is legislative or interpretive. A regulation promulgated in the following circumstance is legislative: "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778. Legislative regulations are to be given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844, 104 S.Ct. 2778. Interpretive regulations, on the other hand, clarify ambiguous terms found in the statute or explain how a provision operates. Interpretive regulations are accorded "considerable weight," id., and should be upheld if they implement the congressional mandate in a reasonable manner. National Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472, 476, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979).
 
 
 25
 123 F.3d at 197 (parallel and string citations omitted). While the distinction between legislative rules and interpretive rules "is not always easily made," Jerri's Ceramic Arts v. Consumer Prod. Safety Comm'n, 874 F.2d 205, 207 (4th Cir.1989), we conclude that the regulation at issue here constitutes an interpretive rule that explains how the Bureau of Prisons will exercise its discretion under the statute in granting or denying early release to prisoners who complete drug treatment programs. Accordingly, we will uphold the regulation so long as it "implements the congressional mandate in a reasonable manner." In making this determination, we look to see whether the regulation "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute." Chevron, 467 U.S. at 845, 104 S.Ct. 2778 (citation omitted); Stiver v. Meko, 130 F.3d 574, 577 (3d Cir.1997).
 
 
 26
 As the district court appropriately recognized, Congress entrusted the decision whether to grant inmates early release under 18 U.S.C. § 3621(e)(2)(B) "solely to the discretion and expertise of the BOP, with a cautious eye toward the public safety and welfare." Pelissero, 955 F.Supp. at 637. In exercising this discretion, the Bureau of Prisons must balance Congress's twin goals of providing an incentive for drug-addicted prisoners to undergo treatment while at the same time protecting the public from potentially violent criminals. We think that the 1997 revised version of 28 C.F.R. § 550.58 constitutes a reasonable interpretation designed to effect this objective. See Bush, 133 F.3d at 458 (upholding 1997 revised regulation on grounds that Bureau of Prisons may rationally deny early release to prisoners whose underlying conduct is violent or prone to violence); cf. Jacks v. Crabtree, 114 F.3d 983, 986 (9th Cir.1997) (upholding former regulation on grounds that Bureau of Prisons' determination that Congress intended to deny early release to potentially dangerous inmates was reasonable).
 
 VI
 
 27
 Applying the 1997 revised regulation, 28 C.F.R. § 550.58 (1997), to Pelissero and Hayes, it is conceded that they "successfully completed a Bureau of Prisons residential abuse treatment program on or after October 1, 1989." 28 C.F.R. § 550.58(a)(3) (1997). While Pelissero and Hayes meet these conditions of the 1997 regulation, they nonetheless do not qualify as prisoners who have been convicted of a nonviolent offense. Interpreting "nonviolent offense," the regulation disqualifies "inmates whose current offense is a felony ... [t]hat involved the carrying, possession, or use of a firearm or other dangerous weapon." 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). Both Pelissero and Hayes were convicted of felonies, see 18 U.S.C. § 3559(a) (an offense for which the maximum term of imprisonment exceeds one year), and both felonies "involved" the possession of a handgun. Pelissero admits that a handgun was in his "possession and control" during the commission of his crime, for which he received a two-level sentencing enhancement, and Hayes' crime by definition involved his possession of a firearm. See 18 U.S.C. § 922(g).
 
 
 28
 Thus, because the 1997 revised regulation promulgated by the Bureau of Prisons disqualifies both Pelissero and Hayes from any sentence reduction authorized by 18 U.S.C. § 3621(e)(2)(B), we affirm the district court's orders denying their petitions for a writ of habeas corpus.
 
 
 29
 AFFIRMED.
 
 CHAMBERS, District Judge, dissenting:
 
 30
 The BOP has exceeded its statutory authority by interpreting 18 U.S.C. § 3621(e)(2)(B) in a manner inconsistent with the plain language of the statute and contrary to settled law. The BOP's misinterpretation of its governing statute, in both its original and newly revised regulations, reveals a misunderstanding of the proper exercise of the BOP's discretion. Both the majority and the BOP would expand the parameters of the BOP's discretion to allow the agency to redefine a statutory term beyond its plain meaning. For these reasons and the reasons stated herein, I respectfully dissent.
 
 
 31
 Unlike the majority, I cannot find that the 1997 revised regulations cure the infirmities of the original regulation. The governing statute, 18 U.S.C. § 3621(e)(2)(B), allows the BOP to grant sentence reductions to inmates "convicted of a nonviolent offense." As almost every circuit court has recognized, "[t]he operative word of § 3621(e)(2)(B) is 'convicted.' " Downey v. Crabtree, 100 F.3d 662, 668 (9th Cir.1996); see also Roussos v. Menifee, 122 F.3d 159, 163 (3d Cir.1997) ("By ignoring the offense of conviction and looking only to sentencing factors, the BOP has attempted to transmogrify a nonviolent offense into a crime of violence.") (quotations omitted); Fuller v. Moore, No. 97-6390, 133 F.3d 914, 1997 WL 791681, at * 2 (4th Cir. Dec.29, 1997) ("The statute is phrased in terms of a conviction of a nonviolent offense.... In other words, the statute makes clear that it is impermissible to consider facts other than those that form the basis for the elements of the offense for which the prisoner was convicted.") (quotations omitted); Bush v. Pitzer, 133 F.3d 455, 457 (7th Cir.1997) ("[T]he statute speaks of a nonviolent offense while the Program Statement anchors the definition to deeds that do not constitute the offense.") (quotations omitted); Martin v. Gerlinski, 133 F.3d 1076, 1080-81 (8th Cir.1998) ("[T]he Program Statement's allowance of consideration of factors that are not part of the offense of conviction is in conflict with the plain language of the statute."); Fristoe v. Thompson, 144 F.3d 627, 631 (10th Cir.1998) ("Section 3621(e)(2)(B) refers to prisoners 'convicted of a nonviolent offense.' (emphasis added). The statute does not permit resort to sentencing factors or sentencing enhancements attached to the nonviolent offense."); Byrd v. Hasty, 142 F.3d 1395, 1398 (11th Cir.1998) ("The statute, 18 U.S.C. § 3621(e)(2)(B), speaks only in terms of conviction."). By using the phrase "convicted of a nonviolent offense," Congress expressly incorporated the statutory elements necessary for conviction under the offense charged, and not conduct unnecessary to the conviction, as a condition of eligibility. However, both the former regulation and the revised regulation allow the BOP to exclude categorically inmates based upon sentencing factors, without regard to the underlying conviction. In fact, the revised regulation substitutes the statutory phrase "convicted of a nonviolent offense" with the phrase "sentenced ... for a nonviolent offense." 28 C.F.R. § 550.58. This is an obvious contradiction of the plain language of the governing statute.
 
 
 32
 Moreover, the fact that the revised regulation does not incorporate § 924(c)'s definition of "crime of violence" does not make the BOP's categorical exclusion of inmates convicted of gun possession crimes any more reasonable. Essentially, the revised regulation defines "a felony ... [t]hat involved the ... possession ... of a firearm" as not a nonviolent offense or, put less awkwardly, as a violent offense. Unlike the majority, I can see no principled distinction between a "violent offense" and a "crime of violence." In my estimation, attempts to distinguish these two terms devolve into empty formalism. Although the revised regulation deletes the reference to § 924(c), the BOP uses language which is identical to that section's provisions and adds the elements of § 922(g). This end run around the case law and Sentencing Guidelines interpreting the statutory elements of these offenses should not be countenanced by the courts.
 
 
 33
 Given the undeniable similarity between "violent offense" and "crime of violence," one would expect the BOP to interpret "violent offense" in accordance with well-established interpretations of "crime of violence." The Supreme Court has held that federal courts are bound by the Sentencing Commission's definition of "crime of violence" in the commentary to U.S.S.G. § 4B1.2, which provides that felon in possession of a firearm convictions are not crimes of violence. Stinson v. United States, 508 U.S. 36, 46-47, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). If the federal courts must uniformly apply the Sentencing Commission's definition of "crime of violence," it makes little sense to allow the BOP to adopt a contrary definition of "violent offense." This Court has also held that "the offense, felon in possession of a firearm, in the absence of any aggravating circumstances charged in the indictment, does not constitute a per se 'crime of violence....' " United States v. Johnson, 953 F.2d 110, 115 (4th Cir.1991). The BOP should be bound by these interpretations. The slight semantic difference between "violent offense" and "crime of violence" does not justify the revised regulation's exclusion of inmates convicted of firearm possession offenses. This is an impermissible interpretation of the governing statute, plainly in conflict with settled law.
 
 
 34
 The majority seems to believe that these contradictions can be justified as permissible exercises of the BOP's discretion. Concededly, the statute vests virtually unfettered discretion in the BOP to determine who, among the statutorily eligible inmates, should be granted early release. Under the statute, the BOP also has broad discretion to determine the length of any particular sentence reduction. But the BOP does not have discretion to interpret statutory language in a way that conflicts with the statute's plain meaning, as well as settled law. As a recent district court opinion explained:
 
 
 35
 BOP does not ... have the "discretion" to interpret "prisoners convicted of a nonviolent offense" and "crimes of violence" under § 924(c)(3) in whatever way it chooses. These are statutory and regulatory terms whose meaning is quite clear, to the extent BOP has its own definitions of these terms, these interpretations are not permissible exercises of discretion but are instead statutory interpretations by an agency to which this Court owes some deference only if not contrary to the statute's clear meaning.
 
 
 36
 LaSorsa v. Spears, 2 F.Supp.2d 550, 560 (S.D.N.Y.1998).
 
 
 37
 Under this view, BOP officials may deny sentence reductions to individual inmates convicted of nonviolent offenses based on such factors as sentence enhancements and firearm possession. But this does not change the fact that such inmates are statutorily eligible for sentence reductions, and are thus statutorily entitled to an individualized determination by the BOP. I do not believe the BOP may categorically exclude such inmates without offending the statute's plain language and settled law. For these reasons, I would join in the reasoned judgment of six of our sister circuits, as well as a recent panel of this court, and find that the BOP exceeded its statutory authority in categorically excluding inmates from sentence reductions based upon sentencing factors and firearm possession convictions.