Christopher Lamar GUIDO, Petitioner,

v.

J.W. BOOKER, Jr., Respondent.

No. 98–3266–RDR.

United States District Court,
D. Kansas.

Feb. 18, 1999.

Christopher Lamar Guido, Leavenworth, KS, pro se.

Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for respondent.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This is a petition for writ of habeas corpus, 28 U.S.C. § 2241, filed by an inmate of the Federal Prison Camp, Leavenworth, Kansas. Jurisdiction is also alleged under 28 U.S.C. § 1331. The issue to be resolved is whether a prisoner convicted of a nonviolent drug offense, whose sentence was enhanced for possession of a firearm, was legally deemed by the Director of the Bureau of Prisons to be ineligible to receive the sentence reduction made available under 18 U.S.C. § 3621(e)(2)(B) to prisoners convicted of "nonviolent offenses."

An Order to Show Cause issued. Respondents filed an Answer and Return; and petitioner filed a brief in response, a motion objecting to exhibits, a Reply, and a motion to supplement record with the sentencing transcript. Having considered all the pleadings and attachments filed together with the relevant authorities, the court makes the following findings and order.

The court finds that petitioner's motion objecting to respondent's evidence (Doc. 5) is without merit and should be denied. The court further finds that petitioner's Motion for Leave to Supplement the Record (Doc. 8) should be granted, and the attached sentencing transcript is accepted as part of the record.

## FACTS

The crucial facts are not in dispute. Petitioner was sentenced on June 14, 1996 to a term of sixty months imprisonment for Attempt to Possess With the Intent to

Distribute Cocaine in violation of 21 U.S .C. §§ 841(a)(1) and 846. At sentencing, the judge applied a two-level guideline enhancement of his offense level pursuant to U.S .S.G. § 2D1.1(b)(1) for "possession of a dangerous weapon" based upon Guido having a loaded handgun on his person at the time of his arrest[1]. Doc. 8, Attachment at 34.

During his incarceration on October 27, 1997, Guido began participation in a "Comprehensive Drug Abuse Treatment Program" (DATP) and successfully completed the residential phase on July 1, 1998. On October 28, 1997, Guido was "officially notified" that he was not eligible for early release consideration. A form entitled "Notice of Residential Drug Abuse Program Qualification and Provisional 3621(e) Eligibility" was issued to Guido from the Drug Treatment Specialist marked "does not" appear eligible. Doc. 1, Exhibit A; Doc. 4, Exhibit 5. The reasons listed were: "Crime of violence as contained in the Categorization of Offenses Program Statement." *Id.* Guido requested re-evaluation from the drug program coordinator on February 23, 1998. This request was denied on February 24, 1998, on the ground that Guido remained "ineligible for the 3621(e) early release" because of his "2 point enhancement for possession of a dangerous weapon." Guido did not file a BP-9, 10 or 11 challenging the denial of eligibility. He filed this action on August 18, 1998. Respondent exhibits and petitioner admits that administrative remedies have not been exhausted. Guido's mandatory release date is March 15, 2000, and he alleges that he would be entitled to immediate release to a half-way house if he were to receive the sentence reduction.

### CLAIMS

Petitioner challenges the decision of the Bureau of Prisons as contrary to and in excess of the plain statutory language of 18 U.S.C. § 3621(e)(2)(B); an improper retroactive application to him of amendments of the BOP's rules; and contrary to the recent opinion of the Tenth Circuit Court of Appeals in *Fristoe v. Thompson,* 144 F.3d 627 (1998).

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ Respondent shows that petitioner has failed to exhaust his administrative remedies and asserts that this action must be dismissed as a result. Petitioner admits that he did not attempt to resolve this matter by way of the available administrative remedies and asserts it would have been futile and time-consuming. The court finds that Guido has failed to exhaust administrative remedies.

Almost without exception, exhaustion of the BOP's administrative process is required prior to relief being sought in federal court. This court is dissatisfied that Guido failed to pursue the available administrative remedies in the five or more months before he filed this action and in no manner intends to encourage habeas litigants to forego exhaustion upon their own estimation that such remedies would be futile. However, under the particular facts of this case, the court concludes that the exhaustion prerequisite should be waived.

The issues presented by Guido for determination are legal and do not depend on the resolution of factual matters through the development of an administrative record. Moreover, this is a "sufficiently extraordinary case" in which the agency need not be granted an opportunity to correct errors in its proceedings since the BOP, which would conduct any administrative review, promulgated and administers the regulation and program statements at issue and has consistently maintained in

---

1. There is a factual dispute as to whether or not Guido threatened the arresting DEA agent with his loaded handgun during a scuffle. The agent stated that he identified himself, while petitioner claims he did not know the man struggling with him was a law enforcement officer. This issue need not be resolved because Guido admits he possessed a weapon, and the sentencing judge made it quite clear that the sentencing enhancement was based only upon possession of a weapon and not upon the disputed facts. Doc. 8, Attachment at 32–34.

litigation across the country that the policy at issue here is lawful. *See Hernandez v. U.S. Parole Commission,* 1 F.Supp.2d 1262, 1264 (D.Kan.1998) *citing Fultz v. Stratman,* 963 F.Supp. 926, 929 (S.D.Cal. 1997). Thus, respondent's arguments that the agency should be allowed to make a factual record, to exercise its expertise, and to correct its own mistakes as well as that the administrative process should not be prematurely interrupted are unpersuasive in this instance. In addition, petitioner is claiming that he is entitled to immediate release and has requested expedited review. The dismissal of this action to require petitioner to exhaust administrative remedies could result in his claim for release becoming moot. More importantly, it is clear from other cases, for example, *Scroger v. Booker,* 39 F.Supp.2d 1296 (D.Kan.1999), that the BOP has routinely denied the claims raised by petitioner when presented by other inmates on administrative appeal. The court concludes that exhaustion would be futile and is waived in this case.

## JUDICIAL REVIEW

 A threshold consideration is whether or not this court has jurisdiction. The Administrative Procedure Act's provisions for judicial review of agency action are expressly made inapplicable by 18 U.S.C. § 3625 to the BOP's decisions regarding sentence reduction under § 3621(e). *See e.g., LaSorsa v. Spears,* 2 F.Supp.2d 550, 558 (S.D.N.Y.1998); *Martin v. Gerlinski,* 133 F.3d 1076, 1079 (8th Cir.1998); *Davis v. Beeler,* 966 F.Supp. 483, 489 (E.D.Ky.1997). However, the Tenth Circuit has stated that while § 3625 may preclude the courts from reviewing the BOP's substantive decisions in these cases, it does not prevent the court from interpreting the statute to determine whether the BOP exceeded its statutory authority or violated the Constitution. *See Fristoe,* 144 F.3d at 630–31; *Crawford v. Booker,* 156 F.3d 1243, 1998 WL 567963, **1, FN3 (10th Cir.1998) (unpublished); *see also Martin,* 133 F.3d at 1076. Moreover, through habeas corpus this court

may inquire into the legality under federal law of a prisoner's detention. *See e.g., Downey v. Crabtree,* 100 F.3d 662, 664 (9th Cir.1996); *Roussos v. Menifee,* 122 F.3d 159, 161, FN3 (3d Cir.1997) (district court jurisdiction under § 2241 and 28 U.S.C. § 1331); *see also, Fuller v. Moore,* 133 F.3d 914, 1997 WL 791681 (4th Cir.1997, unpublished, per curiam, Table); *Venegas v. Henman,* 126 F.3d 760, 761 (5th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1679, 140 L.Ed.2d 817 (1998); *Orr v. Hawk,* 156 F.3d 651 (6th Cir.1998); *Pearson v. Helman,* 103 F.3d 133 (7th Cir.1996, unpublished); *Sesler v. Pitzer,* 110 F.3d 569 (8th Cir.) *cert. denied,* —— U.S. ——, 118 S.Ct. 197, 139 L.Ed.2d 135 (1997); *Byrd v. Hasty,* 142 F.3d 1395, 1396 (11th Cir.1998); *LaSorsa,* 2 F.Supp.2d at 559. In each of the cited cases the BOP's interpretation of eligibility for sentence reduction under § 3621 was reviewed in a habeas corpus context.

The issues presented are purely legal. Consequently, an evidentiary hearing is not necessary.

## ENABLING STATUTE—VCCLEA

The court begins by considering the statute which petitioner claims entitles him to early release, 18 U.S.C § 3621(e)(2). As part of the Crime Control Act of 1990, Congress required the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). A few years later, to provide a new incentive to federal prisoners to enroll in and complete the BOP's drug treatment programs, Congress authorized the Bureau under § 3621(e)(2)(B) of the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA), to reduce the sentences of eligible prisoners who completed a drug treatment program. The VCCLEA, promulgated in November, 1994, provides in pertinent part:

(2) Incentive for prisoners' successful completion of treatment program.—

(A) Generally.—Any prisoner who, in the judgment of the Director of the

[BOP], has successfully completed a program of residential substance abuse treatment . . . , shall remain in the custody of the [BOP] under such conditions as the [BOP] deems appropriate. . . .

(B) Period of custody.—The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2). On its face, the statute unambiguously precludes the early release of prisoners convicted of violent offenses and limits reduction to one year or less for other prisoners having completed a drug abuse treatment program. *See LaSorsa*, 2 F.Supp.2d at 554.

## BOP REGULATIONS AND PROGRAM STATEMENTS

Congress defined several terms in § 3621(e), but did not define "nonviolent offense." Nor does the statute specify criteria for awarding a reduction. *Byrd*, 142 F.3d at 1396; *see also Fristoe*, 144 F.3d at 631; *Martin*, 133 F.3d at 1078. Respondent explains in its Answer and Return (Doc. 4 at 9–10) that because of these gaps in the statute, and because the legislative history[2] of the statute left to the Bureau of Prisons the discretion to implement the program, the BOP developed criteria to determine which inmates would be eligible for early release.

### 28 C.F.R. § 550.58 (1996)

First, respondent states, the BOP "published an interim rule on May 25, 1995,"

[*citing* 60 Fed.Reg. 53,690 (1995) ], "codified at 28 C.F.R. § 550.58," which defined "nonviolent offense" as the converse of "a crime of violence." Under this rule, the qualification of "convicted of a nonviolent offense" was implemented by excluding from eligibility, among others, those persons whose current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)[3]. In other words, the regulation did two things: (1) as a matter of statutory interpretation, it defined "prisoner convicted of a nonviolent offense" in § 3621(e)(2)—the type of prisoner the BOP is not forbidden to release early—to mean a prisoner whose "current offense" does not meet the definition of "crime of violence" in 18 U.S.C. § 924(c)(3). *LaSorsa*, 2 F.Supp.2d at 557. Second, it laid out certain criteria under which the BOP would categorically refuse to exercise its discretion to grant early release. *Id.*

### PROGRAM STATEMENT 5330.10

At about the same time, the BOP published Program Statement 5330.10, *Drug Abuse Programs Manual, Inmate,* in the Federal Register setting forth guidelines for drug abuse treatment services (effective June 26, 1995). This Program Statement contains provisions on eligibility for early release in Chapter 6 (amended May 17, 1996 and October 9, 1997) which merely reiterate (and have changed with) the contents of the regulation.

### PROGRAM STATEMENT 5162.02

On July 24, 1995, an additional Program Statement was adopted, P.S. 5162.02[4],

---

2. Congress left to the discretion of the BOP the determination of how to implement the specifics of the program:

 In effect, this subparagraph [ (e)(2)(B) ] authorizes the BOP to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, based on the criteria to be established and uniformly applied by the BOP. H.R.3350, 103d Cong. § 1 (passed by House Nov. 3, 1993) H.R.Rep. 103–320 (1993).

3. Section 924(c)(3) defines a crime of violence as:

 an offense that is a felony and—
 (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
 (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

4. P.S. 5162.02 does not apply to petitioner. P.S. 5330.10 states that as of October 9, 1997

*Definition of Term, "Crimes of Violence"*, to further interpret the language of the interim rule regarding the definition of the term "crime of violence" from Section 924(c)(3). Doc. 4 at 9. Section 5 of this program statement presented the "statutory definition" of "crime of violence" citing § 924(c)(3).

Section 9 of Program Statement 5162.02 enumerated various offenses in the United States Code, including 21 U.S.C. § 841, which "may be crimes of violence depending on the specific offense characteristic assigned." Section 9 provided:

> At the time of sentencing, the court makes a finding if the offense involved violence, and this finding is reflected in the Presentence Investigation Report section entitled "Offense Computation," under the subsection entitled "Specific Offense Characteristics."

An example is then given:

> Section 841 of Title 21, [U.S.C.] makes it a crime to manufacture, distribute, or possess with the intent to distribute drugs. Under the Sentencing Guidelines (§ 2D1.1 and § 2D1.11) the defendant could receive an increase in his or her base offense level because of a "Specific Offense Characteristic," e.g., if a dangerous weapon was possessed during the commission of the offense, the court would increase the defendant's base offense by 2 levels. This particular "Specific Offense Characteristic" (possession of a dangerous weapon during the com-

mission of a drug offense) poses a substantial risk that force may be used against persons or property. Accordingly, a defendant who has received a conviction for manufacturing drugs ... and receives a two-level enhancement for possession of a firearm has been convicted of a "crime of violence."

Respondent notes that "inmates nationwide" then "began challenging the regulations and program statements implementing the early release provisions of the drug treatment program," and that "several appellate courts invalidated select provisions" of Program Statement 5162.02. Doc. 4 at 10–11.

## REVISED REGULATION 28 C.F.R. § 550.58 (1998)

Respondent further instructs that the BOP responded to the controversy surrounding its first rule by adopting a revised regulation, 28 C.F.R. § 550.58 (1998), on October 9, 1997, which underwent notice and comment, *citing* 62 Fed.Reg. 53,-690. Respondent asserts that a "significant change" in the new regulation is that it no longer cites 18 U.S.C. § 924(c)(3) for its definition[5] of the term "crime of violence."

The amended version of § 550.58 identifies three statutory prerequisites for eligibility: sentenced for a nonviolent offense, determined to have a substance abuse problem, and successful completion of the drug abuse treatment program. In the

the new rule and P.S. 5162.04 supersede the old policy, namely P.S. 5162.02, "with respect to inmates who had not yet begun participation in the residential phase of RDAP." Guido began program participation on October 27, 1997.

5. One court described the definition in the amended 550.58 and identified its source as:
> an amalgam of different United States Code sections, rather than merely drawing from § 924(c)(3). This now includes the § 924(c)(3) language virtually verbatim, but additionally provides, in relevant part, that "[i]nmates whose current offense is a felony ... [t]hat involved the carrying, possession or use of a firearm or other dangerous weapon or explosives" are ineligible for

early release. 28 C.F.R. § 550.58. The former 42 U.S.C. § 3796ii–2 contained remarkably similar language, defining a "violent offender" as one who "is charged with or convicted of an offense, during the course of which offense or conduct ... [the accused] carried, possessed, or used a firearm or dangerous weapon...." (repealed 1996). The BOP has at least implicitly acknowledged in other litigation that its new definition of crime of violence derives from the repealed statute. *Sesler v. Pitzer*, 110 F.3d 569, 571–72 (8th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 197, 139 L.Ed.2d 135 (1997); *Davis v. Crabtree*, 109 F.3d 566, 569–70 (9th Cir.1997).
*Orr v. Hawk*, 156 F.3d at 651, 653.

new regulation, the Director of the BOP no longer defines or even mentions the term "crime of violence." Instead, she precludes categories of inmates from early release as an exercise of her discretion. Those excluded, among others, are inmates whose current offense is a felony:

(A) that has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or

(B) that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or

(C) that by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or

(D) that by its nature or conduct involves sexual abuse offenses committed upon children.

28 C.F.R. 550.58(a)(1)(vi) (1998). Paragraphs (A) and (C) are the same as § 924(c)(3).

### NEW PROGRAM STATEMENT 5162.04

The BOP further clarified its interpretation of the enabling statute and its revised regulation through issuance of its Program Statement 5162.04 entitled "Categorization of Offenses" (effective October 9, 1997). Section 7 of P.S. 5162.04 appears to be the one applicable to petitioner [6] even though it is not specified in the administrative record. Section 7 begins:

As an exercise of the discretion vested in the Director, an inmate serving a sentence for an offense that falls under the provisions described below shall be precluded from receiving certain Bureau program benefits.

Thereafter it also essentially recites the language, but not the section number, of 924(c)(3).

Subsection (b) of P.S. 5162.04 provides in relevant part:

**6.** Section 6(a) lists numerous offenses categorized as "crimes of violence in all cases."

*Criminal Offenses with a Specific Offense Characteristic Enhancement.*

\* \* \* \* \* \*

At the time of sentencing, the court makes a finding of whether the offense involved the use or threatened use of force, and this finding is reflected in the PSI section entitled "Offense Computation," subsection entitled "Specific Offense Characteristics." This subsection references a particular U.S. Sentencing Guideline that provides for an increase in the Total Offense Level if the criminal violation was committed with force.

The following example, very similar to the one in section 9 of P.S. 5162.02, is set forth in the revised regulation:

Section 841 of Title 21, United States Code makes it a crime to manufacture, distribute, or possess with the intent to distribute drugs. Under the Sentencing Guidelines (§ 2D1.1 and § 2D1.11), the defendant could receive an increase in his or her base offense level because of a "Specific Offense Characteristic" (for example, if a dangerous weapon was possessed during commission of the offense), the court would increase the defendant's base offense level by two levels. This particular "Specific Offense Characteristic" (possession of a dangerous weapon during the commission of a drug offense) poses a serious potential risk that force may be used against persons or property. Specifically, as noted in the U.S. Sentencing Guidelines § 2D1.1., application note 3, the enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. Accordingly, an inmate who was convicted of manufacturing drugs, (21 U.S.C. § 841) and received a two-level enhancement for possession of a firearm, has been convicted of an offense that will preclude the inmate from

Petitioner's offense is not on this list.

receiving certain Bureau program benefits.

Next in subsection (b) is a list of "offenses for which there could be a Specific Offense Characteristic enhancement for the use of force." Paragraph (3) of subsection (b) includes "Title 21 U.S.C. 841 (NOT (e)), controlled substance violation."

Thus, the current program statement no longer classifies a drug offense with enhancements for firearms possession as a "crime of violence" under § 924(c)(3), but categorizes it as an offense committed with such risk of force that the Director in her discretion shall deny eligibility. The revised P.S. 5162.04 instructs BOP officials that:

> if an inmate is convicted of an offense listed in Section 7 [corresponding to previous section 9 of 5162.02], the inmate should be denied a program benefit because he or she committed an offense identified at the Director's discretion, rather than a crime of violence.

P.S. 5162.04, ¶ 5. Under Section 7(b)(3) of the Program Statement and under the revised regulation, then, petitioner's crime was not nonviolent, due to behavior underlying the sentencing enhancement which "increased the danger of violence." Guido was therefore denied eligibility for the sentence reduction.

### FRISTOE

In April, 1998, the United States Court of Appeals for the Tenth Circuit held under similar facts that the BOP may not categorically exclude from consideration for early release upon completion of a drug treatment program an inmate convicted of a nonviolent offense whose sentence was enhanced for possession of a weapon. *See Fristoe,* 144 F.3d at 631. *Fristoe* is controlling authority in this court. The rationale of the *Fristoe* court was that:

> Reliance on sentencing enhancements ... conflicts with the plain language of the statute. Section 3621(e)(2)(B) refers to prisoners "convicted of a nonviolent offense." The statute does not permit resort to sentencing factors or sentenc-

ing enhancements attached to the nonviolent offense.

\* \* \* \* \* \*

> ... The eligibility criteria in 18 U.S.C. § 3621(e)(2)(B) refer directly to the offense for which the prisoner was convicted.

*Fristoe,* 144 F.3d at 631.

Respondent correctly points out that *Fristoe* was decided on the petition of an inmate whose early release had been denied under the old regulation and P.S. 5162.02. Respondent asserts that *Fristoe* is irrelevant to the instant action which it advises is governed by the amended regulation and P.S. 5162.04. Doc. 4, at 21. This court of necessity has reviewed the prior regulation and program statements and the case law considering those provisions to determine the differences and whether or not the amended provisions applicable to this case are free of the statutory misinterpretation found in *Fristoe.*

### OTHER CASE LAW

As respondent noted, there has been a spate of recent cases brought by inmates challenging the BOP's denial of their requests for the early release benefit of 3621(e)(2)(B). Almost all dealt with the old regulation and P.S. 5162.02, and held like *Fristoe* that the BOP misinterpreted 18 U.S.C. § 3621(e)(2)(B). Several courts emphasized that the statute speaks only in terms of conviction and effectively construed this as an additional statutory limit on the BOP's discretion.

The Third Circuit, for example, found that the first regulation promulgated by the BOP and P.S. 5162.02 were contrary to § 3621(e)(2)(B). In its view:

> The statute speaks clearly and unambiguously. The operative word of § 3621(e)(2)(B) is "convicted." .... (Petitioner) was convicted of a drug-trafficking offense, which is not a crime of violence. Section 3621(e)(2)(B) addresses the act of convicting, not sentencing or sentence-enhancement factors. The

Bureau erred by conflating the guilt-determination (conviction) and sentencing processes.

*Roussos*, 122 F.3d at 162. The *Roussos* court observed that under the statute, petitioner "is eligible in the absence of his conviction for a nonviolent offense or a crime of violence, neither of which occurred." *Id.*

The Eighth Circuit reached a similar result by reasoning that:

> The operative word in § 3621(e)(2)(B) is "convicted," thus requiring the BOP to look to the offense of conviction itself to determine whether it meets the definition of a "nonviolent offense"; § 3621 does not address sentencing or sentencing-enhancement factors. Here, appellants' convictions were for drug trafficking offenses, which are not crimes of violence.

*Martin*, 133 F.3d at 1079. The court determined that "the inclusion of sentencing enhancement factors in the determination of what is a 'nonviolent offense' is not a permissible interpretation of the statute." *Id.*

The Eleventh Circuit reasoned that convictions of violations of 21 U.S.C. §§ 846 and 841(a)(1) are not crimes of violence, and that "although (petitioner) received a sentencing enhancement under § 2D1.1(b)(1), section 3621(e)(2)(B) addresses the act of convicting, not sentencing or sentence-enhancement factors." *Byrd v. Hasty*, 142 F.3d at 1397. The court concluded that the "BOP's interpretation . . . is simply in conflict with the statute's plain meaning." *Id.*

The Fourth Circuit stated in *Fuller v. Moore*, at * 3, *citing Downey*, 100 F.3d at 668: "The relevant statute speaks clearly and unambiguously. The operative word of § 3621(e)(2)(B) is 'convicted.' " The court in *Fuller* found that the "BOP's interpretation contravenes the language of the statute which refers to a 'convicted'

person rather than to the 'commission' of an offense [7]."

The Ninth Circuit in *Downey* found that the BOP "departed from traditional methods of statutory construction" in its interpretation of the phrase "convicted of a nonviolent offense" and instead adopted "a unique statutory interpretation technique" to conclude "that inmates are 'convicted of a nonviolent offense' if they did not commit a crime of violence as determined only after considering various Sentencing Guideline factors that may or may not be directly related to the crime for which the inmate was convicted." *Downey v. Crabtree*, 100 F.3d at 666. The *Downey* court held that possession of a controlled substance with intent to sell, 21 U.S.C. § 841(a)(1), is a nonviolent offense. *Id.* at 668.

The *Downey* court reasoned that the BOP's interpretation of § 3621(e)(2)(B) runs counter to the teachings of *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) as follows:

> There the Court "require[d] the trial court to look only to the fact of conviction and the statutory definition of the prior offense" in determining whether petitioner's prior burglary offense constituted a previous "conviction of a violent felony" for purposes of a sentencing enhancement statute. *Id.* at 602, 110 S.Ct. at 2160. The Bureau in this case relied on sentence-enhancement devices and related staff considerations, factors external to the constituent elements of the crime of conviction, to define "a nonviolent offense" for the purposes of 18 U.S.C. § 3621(e)(2)(B). Reliance on such external factors flies in the face of the *Taylor* analysis.

*Downey*, 100 F.3d at 669.

In an opinion cited by the Tenth Circuit in *Fristoe*, the United States District Court for the District of Colorado held that:

---

7. The Fourth Circuit case cited by respondent in support of its position, *Pelissero v. Thompson*, 155 F.3d 470 (4th Cir.1998) was contrary to *Fuller*, but was withdrawn by that court on rehearing at 1998 WL 971397 (November 27, 1998).

[S]ection 3621 plainly allows eligibility for persons "convicted of a nonviolent offense." Section 9 of the Program Statement (5162.02) purports to look past the conviction, however, and determine whether a weapon was involved, regardless of the conviction. Admirably, BOP's Program Statement attempts to take a more comprehensive view of whether a prisoner constitutes a risk of violence, which arguably furthers the important policy of weighing early release against concerns for public safety. Nevertheless, BOP may not rewrite the statute. Congress is presumed to mean what it says, and BOP's interpretation of § 3621 abrogates the word "convicted."

*Sisneros v. Booker,* 981 F.Supp. 1374, 1376 (D.Colo.1997).

Of utmost importance to this court is the *Fristoe* decision by the Tenth Circuit. The petitioner in *Fristoe* was convicted of violating the same statute and received the same sentencing enhancement as Guido. The *Fristoe* court noted that "courts typically do not consider" conspiracy to distribute cocaine, a "crime of violence." *Fristoe,* 144 F.3d at 631. The court held that "the statute does not permit resort to sentencing factors or sentencing enhancements attached to the nonviolent offense." *Id.*

The Tenth Circuit disagreed with the position taken by the Fifth Circuit in *Venegas,* 126 F.3d 760, that

> the use of the phrase "a nonviolent offense" merely excludes all inherently violent offenses from eligibility for consideration, while leaving to the Bureau's discretion the determination of which other offenses will or will not be eligible for consideration.

*Fristoe,* 144 F.3d at 632. The Tenth Circuit stated that the Fifth Circuit's position "would permit the BOP to treat nonviolent offenders as though they were convicted of a violent offense, undermining the express language of the statute." *Id.* The *Fristoe* court summarized its own holding as: "any resort to sentencing factors in the absence of conviction of an offense which constitutes a crime of violence is impermissible...." *Id.* at FN3.

Respondent would apparently have us disregard all the aforementioned reasoning and case law on the basis that the BOP has promulgated and amended regulations and program statements containing newly worded interpretations of the early release statute. Respondent suggests that its revised regulation and program statements relegate these cases to a "mostly of historic interest" status. Doc. 4 at 12. To the contrary, this court finds that the statutory language interpreted in *Fristoe* has not changed at all, so that these cases remain quite relevant.

There are other cases besides *Venegas* which have upheld decisions of the BOP to deny early release despite challenges to the former regulation and P.S. 5162.02. However, this court finds that the circumstance of actually having a conviction for possession of a firearm such as in *Bush v. Pitzer,* 133 F.3d 455 (7th Cir.1997) and *Love v. Tippy,* 133 F.3d 1066 (8th Cir.) *cert.denied,* —— U.S. ——, 118 S.Ct. 2376, 141 L.Ed.2d 743 (1998); or of a prior violent offense such as in *Martinez v. Flowers,* 164 F.3d 1257 (10th Cir.1998), *Stiver v. Meko* 130 F.3d 574 (3d Cir.1997) and *Jacks v. Crabtree,* 114 F.3d 983 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1196, 140 L.Ed.2d 325 (1998), clearly distinguishes those cases from the instant action.

There are also cases which, even with a distinguishing circumstance, have held that the BOP has misinterpreted the statute. *See e.g., Royce v. Hahn,* 151 F.3d 116 (3d Cir.1998) (convictions for firearm possession); *Davis v. Crabtree,* 109 F.3d 566 (9th Cir.1997) (same); *McPeek v. Henry,* 17 F.Supp.2d. 443 (D.Md.1998) (same). These courts rely heavily on "well-established" case law in their respective circuits holding that mere possession of a firearm by a felon is not a "crime of violence" under 18 U.S.C. § 924(c)(3).

In *Fristoe,* no such precedent was relied upon since the Tenth Circuit had not de-

cided the firearms issue. The rationale that mere possession is nonviolent was mentioned only in a footnote. In *Fristoe,* the primary ground for decision was that the BOP exceeded its statutory authority.

## LEGAL STANDARDS

At the outset, the court notes that petitioner's entitlement to relief depends on his showing that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Guido contends that the regulation and program statement applied to deny his application for early release are contrary to federal law, namely 18 U.S.C. § 3621(e)(2)(B).

Respondent contends that its interpretation of section 3621(e)(2)(B) in its revised regulation is entitled to "full deference." The Tenth Circuit has instructed that the BOP's formal regulation interpreting this statute is entitled to "full Chevron deference," unlike its previous informal program statement. *See Martinez* at 1259, *citing Fristoe,* 144 F.3d at 631. Properly promulgated regulations have the force of law and may themselves limit the BOP's own discretion further than the statute. *LaSorsa,* 2 F.Supp.2d at 556.

In reviewing an agency's interpretation of a statute through a formal regulation, the court defers to the agency's interpretation if it is based on a permissible construction of the statute. *Martinez* at 1258, *citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Regulations such as § 550.58 are normally reviewed under the two-step standard set out by the Supreme Court in *Chevron; Wottlin v. Fleming,* 136 F.3d 1032, 1035 (5th Cir.1998). First, the court looks to the intent of Congress and, if it is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. If, however, the language of the statute is ambiguous or silent on a particular issue, then the court turns to the second step of the analysis and "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2781. If the agency's regulatory interpretation is reasonable, it will receive controlling weight unless "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782; *Martinez* at 1259.

If 18 U.S.C. § 3621(e)(2)(B) is viewed as silent regarding the BOP's authority to deny early release to inmates who have received sentencing enhancements for firearm possession, the court must proceed to decide whether 28 C.F.R. § 550.58 (1998) represents a "permissible construction of the statute." *See Martinez* at 1259. On the other hand, if the intent of Congress is clear in § 3621(e)(2)(B), then the court must decide whether the BOP is giving it effect. Thus, either step of the standard leads the court in this case to determine whether the BOP's interpretation of the statute is a reasonable, permissible construction.

The Program Statement, as an internal agency guideline, is entitled to "some deference" if it is a permissible construction of the statute. *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). Administrative program statements are afforded less deference than regulations because they are "merely internal guidelines [that] may be altered by the Bureau at will." *Koray v. Sizer,* 21 F.3d 558, 562 (3d Cir.1994), *rev'd on other grounds sub nom., Reno v. Koray, supra; see also Martinez* at 1259. However, the court reiterates that on a question of statutory interpretation, no deference is due where the agency's "interpretation is .... in conflict with the plain language of the statute." *Sisneros v. Booker,* 981 F.Supp. at 1376, *citing National R.R. Passenger Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992).

## DISCUSSION

### ENTITLEMENT TO EARLY RELEASE

 Petitioner at least implies in his pro se petition that he has an entitlement to or liberty interest in early release under § 3621, which has been improperly infringed. It has been clearly held by the United States Supreme Court that a convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979). Nor does § 3621(e)(2)(B) create a liberty interest. *Fristoe*, 144 F.3d at 630. The language of the statute is not mandatory. It provides that the inmate's sentence "*may* be reduced by the Bureau of Prisons." (emphasis added). A statute which allows a decisionmaker to deny the requested relief within its unfettered discretion does not create a constitutionally-recognized liberty interest. *See Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983). The court concludes that petitioner's claim of an entitlement to early release under § 3621(e) has no legal merit.

### ILLEGAL RETROACTIVE APPLICATION

Guido's assertion that certain BOP rules may not be retroactively applied to him is also without merit. Guido argues that since he committed his offense and was sentenced before the BOP adopted P.S. 5162.04 and Operations Memorandum 052–98 (5162), these provisions cannot now be applied to him.

The OM 052–98 (5162) referred to by petitioner was promulgated on July 1, 1998 in response to *Fristoe*. This memorandum by its own terms does not apply to Guido because he was not participating in a DATP on or before October 9, 1997. As for P.S. 5162.04, it was promulgated on October 9, 1997, before petitioner entered the drug treatment program. *See Martinez* at 1259, FN3.

In any event, there is no ex post facto violation here, because the challenged provisions did not affect the legal consequences of Guido's crime or increase his punishment. *See Fristoe*, 144 F.3d at 630, citing *Stiver v. Meko*, 130 F.3d at 578 (rejecting similar argument). Moreover, the reduction of sentence afforded by § 3621(e)(2)(B) has never been held to be an automatic entitlement. Rather, it is authorized for qualifying inmates in the discretion of the Bureau of Prisons. *See Bush*, 133 F.3d at 457. Furthermore, the agency has been consistent in its interpretation of its regulation and enabling statute to include an enhanced drug offense as an excluded offense first as a "crime of violence" and then due to its risk of violence. Thus, the new provisions do not represent a change in position for the BOP, and accordingly might apply retrospectively. *Orr*, 156 F.3d at 654; *see also Bush*, 133 F.3d at 458.

### VIOLATION OF FRISTOE

 Petitioner's main claim is that the denial of his application for sentence reduction exceeded the discretionary authority granted the Bureau of Prisons under 18 U.S.C. § 3621(e)(2)(B). Applying the revised regulation, 28 C.F.R. § 550.58 (1998), to Guido, it is conceded that he "successfully completed a DATP on or after October 1, 1989." In addition, it is generally accepted that his drug trafficking offense is, without more, considered to be nonviolent. Even though Guido meets these conditions of the 1998 regulation, he apparently does not qualify under the BOP's current interpretation as a prisoner who has been "convicted of a nonviolent offense."

Interpreting the phrase "convicted of a nonviolent offense," the revised regulation disqualifies inmates whose current offense has an element of actual or threatened force, or that by its nature or conduct presents a serious potential risk of physical force. As noted, these exclusions

are retained from the former rules derived from 924(c)(3). 28 C.F.R. § 550.58(a)(1)(vi)(A) & (C) (1998). New language in the regulation disqualifies inmates, in addition, whose current offense "involved" possession of a weapon. 28 C.F.R. § 550.58(a)(1)(vi)(B). A district court very recently opined that:

> In effect, the BOP has ... incorporated into the revised regulation the language of the sentence enhancement for possession of a firearm, language that previously was in Program Statement 5162 .02.

*Hicks v. Brooks,* 28 F.Supp.2d 1268, 1998 WL 817828 at *5 (D.Colo.1998). This court disagrees that the added language incorporates sentence enhancements. Instead, the new regulation simply adds a provision expressly excluding crimes such as felon in possession of a firearm. The Tenth Circuit in *Martinez* suggested as much with its observation that the current "550.58 looks to inmates' actual criminal convictions and does not attempt to convert something else, such as a sentencing enhancement, into a conviction." *Martinez* at 1260.

However, even if this court agreed with *Hicks* that the BOP intends by provision (B) in its regulation to exclude inmates with sentence enhancements for possession and not just weapons convictions, it would have no difficulty holding under the reasoning in *Fristoe* that the regulation so interpreted would conflict with the plain language of 18 U.S.C. § 3621(e)(2)(B). To either promulgate or interpret regulatory language as allowing exclusion on the basis of sentence enhancements abrogates the word "convicted" in the statute and exceeds the authority given the BOP.

In any case, the BOP did not cite provision (B) in the regulation as the basis for its finding that petitioner's offense is a crime that excludes him from early release. The BOP cited Program Statement 5162.04 as authority for finding Guido ineligible based upon his sentencing enhancements. Reliance on sentencing enhancements conflicts with the plain language of the statute whether attempted by regulation or program statement. The court

concludes that the portion of Section 7(b), P.S. 5162.04 which provides that an inmate convicted of a violation of 21 U.S.C. § 841 is excluded based upon sentencing enhancements, conflicts with the enabling statute and cannot be applied to deny petitioner the early release benefit of § 3621(e)(2)(B).

This court further finds that Section 7(b) as to sentencing enhancements is contrary to the rationale of *Fristoe*. In its subsequent *Martinez* opinion, the Tenth Circuit described its reasoning in *Fristoe* as that " § 3621(e)(2)(B) simply does not authorize BOP to treat sentence enhancements or factors as if they were 'convictions.' " *Martinez v. Flowers,* at 1260. The court further commented:

> In other words, if the prisoner has not been convicted of a violent offense, BOP cannot use sentencing factors or enhancements to convert a nonviolent offense into a violent one for purposes of § 3621(e)(2)(B).

*Id.* at 1260. This court is compelled by the rationale in *Fristoe* to find that the BOP has improperly denied early release to petitioner under P.S. 5162.04 on the sole basis of sentence enhancements.

The changes made by the BOP to its regulation and program statements have not rendered *Fristoe* irrelevant. There are no significant differences in the overall scheme of release determinations applicable to petitioner from that examined in *Fristoe*. Moreover, the specific revisions to section 550.58, such as deleting the statute number 18 U.S.C. 924(c)(3), but adding the text of the statute to the regulation along with provision (B), are not shown to have enlarged the BOP's discretion regarding sentence enhancements as it was interpreted in *Fristoe*.

Likewise, the provisions of the new program statement applied to petitioner are not significantly different from P.S. 5162.02. P.S. 5162.04 contains substantially the same paragraph and example specifying that a two-level sentencing enhancement for possession of a firearm attached to a conviction under 21 U.S.C. § 841 re-

quires a denial of early release. Changing the title of the program statement from "Definition of Term, Crimes of Violence" to "Categorization of Offenses" did not correct the statutory misinterpretation found in *Fristoe*. Nor did excluding drug trafficking offenses with enhancements as "an exercise of the discretion vested in the Director," rather than "crimes of violence."

The limit to the director's discretion by the statutory phrase "convicted of a nonviolent offense" survived these changes. The director still does not have discretion to treat a nonviolent offense as a violent offense based on sentencing enhancements. As was stated in *Hicks* on this precise issue:

> The intent of Congress in enacting 18 U.S.C. § 3621(e)(2)(B) is clear. The statute refers to a nonviolent offense and does not contemplate the consideration of any sentencing factors. Although the Tenth Circuit decided *Fristoe* based upon the former 28 C.F.R. § 550.58 and Program Statement 5162.02, not the 1997 revised regulation, the logic and rationale of *Fristoe* apply to the revised regulation as well.

*Hicks v. Brooks*, 28 F.Supp.2d 1268, 1272–73.

The reasoning of *Fristoe* applies to this case and entitles Guido to relief. The narcotics offenses under § 841(a)(2), including Guido's predicate offense—attempt to possess with intent to distribute cocaine—are generally held to constitute nonviolent offenses. The "operative word" of § 3621(e)(2)(B) is "convicted." Thus, Guido was "convicted of a nonviolent offense." Section 3621(e)(2)(B) addresses the act of convicting, not sentencing or sentence enhancement factors. Even though a less deferential standard was applied when P.S. 5162.02 was invalidated in *Fristoe*, and "full Chevron deference" is due the new regulation, this court finds that under the higher standard the decision to deny petitioner early release based solely on sentencing enhancements is still

a violation of the plain language of 18 U.S.C. § 3621(e)(2)(B). The BOP continues to err "by conflating the guilt-finding process, which is reflected in the statutory language 'convicted,' with the punishment process, which is reflected in the Bureau's program statements referring to sentencing guidelines." *Downey v. Crabtree*, 100 F.3d at 665.

## BOP DISCRETION

■■■ From the foregoing, it is clear that *Fristoe* pronounced and enforced a limitation on the BOP's discretion to deny the early release benefit. That limitation derives from the plain language of the statute and requires the BOP to look to convictions rather than sentencing enhancements or factors. The BOP heretofore has recognized only those limits which go to its discretion to grant early release. The limit on its discretion to deny the release benefit has consequently not been adequately implemented in the BOP's regulation or program statement. The BOP's decision to deny early release to Guido on the basis of P.S. 5162.04 is contrary to that limitation.

However, the court emphasizes that the discretion granted to the Bureau of Prisons by the statute's language is otherwise quite broad. *See Martinez* at 1259. Without question, the BOP has broad discretion over the entire drug treatment process within the federal corrections system, beginning with determining which inmates ever enter substance abuse programs. *Crabtree*, 100 F.3d at 666. Like the drug treatment placement decisions, decisions regarding whether to grant or deny eligible inmates a sentence reduction under § 3621(e) remain within the Bureau's discretion. *Crabtree*, at 671. While eligibility for early release under § 3621(e)(2)(B) is open to all prisoners who meet the statutory requirements, the statute vests the BOP with broad discretion to grant or deny sentence reductions to eligible prisoners [8]. *LaSorsa*, 2 F.Supp.2d at 553–55; *Jacks*, 114 F.3d at 984.

---

8. As noted in *Jacks*, 114 F.3d at 984, by providing that a sentence "may be reduced," the

statute gives the Bureau broad discretion to grant or deny reduction. This conclusion is

In the recent, well-written opinion of *LaSorsa v. Spears*, the United States District Judge cited portions of the legislative history of the early release program's enactment as part of the VCCLEA, and found that the provisions as introduced in both the House and Senate contained no limitations whatsoever on the BOP. He noted that the Senate amended its version of the bill to change the language in paragraph (B) from "prisoner" to "a prisoner convicted of a nonviolent offense" with no discussion. *See LaSorsa*, 2 F.Supp.2d at 554 *citing*, 139 Cong.Rec. S15030–70 (daily ed. Nov. 11, 1993). The judge further noted that the floor debates in the House of Representatives make it clear that substantial discretion was intended to vest in the BOP.[9]

The judge in *LaSorsa* stated his opinion that the BOP "certainly has, under the statute, the ability to deny early release to prisoners, the attendant circumstances of whose convictions involved weapons possession, ... even though they were not convicted of a weapons offense." *Id.* at 555. The court reasoned:

> It is important to realize, however, that such considerations are proper not as an exercise in statutory interpretation by BOP—i.e ., not as a matter of defining the phrase "convicted of a nonviolent offense" under § 924(c)(3)—but rather as an exercise of the discretion granted by the statute to determine who, among those convicted of a nonviolent offense, will be given early release.

*LaSorsa*, 2 F.Supp.2d at 556. The judge in *LaSorsa* noted that it is this distinction which some of the case law from other circuits fails to clearly articulate. *Id.*

This court disagrees with this dicta in *LaSorsa*. Here, petitioner is eligible under section 3621(e)(2)(B), but ineligible under the BOP's program statement creating an additional eligibility requirement. The BOP certainly has authority to create additional eligibility requirements, even ones not suggested by the statute which is largely silent as to criteria. However, the BOP does not have authority to create an additional eligibility requirement which conflicts with the plain language of the statute. This court's holding is limited to invalidating the improper eligibility requirement.

The BOP's main argument here, as in *LaSorsa*, appears to be that because it has broad discretion under § 3621(e) to determine which prisoners are granted early release, it has the discretion to define the statutory terms however it believes will best serve its objectives. Considering this position, the judge in *LaSorsa* stated:

> This argument misses a crucial distinction. BOP does have broad discretion to determine which, among the class of "prisoners convicted of a nonviolent offense," will be granted early release and for how long (up to one year). BOP does not, however, have the "discretion" to interpret "prisoners convicted of a nonviolent offense" ... in whatever way it chooses. These are statutory and regulatory terms whose meaning is quite clear, to the extent BOP has its own definitions of these terms, these interpretations are not permissible exercises of discretion but are instead statutory interpretations by an agency to which this court owes some deference only if

reinforced by the preceding section of the enabling statute, which states that any prisoner who completes a drug treatment program "shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate." 18 U.S.C. § 3621(e)(2)(A).

9. Both the chair and the ranking member of the Crime and Criminal Justice Subcommittee of the House Judiciary Committee stressed, in response to concerns over the early release program, that release was not guaranteed but was up to BOP. *See* 139 Cong. Rec. H8728 (daily ed. Nov. 3, 1993) (statement of Rep. Schumer) ("[T]his is not mandatory time off, it is an option, up to the prison authorities."), 139 Cong.Rec. H8724 (daily ed. Nov. 3, 1993) (statement of Rep. Sensenbrenner) ("[T]hat is in the discretion of the Bureau of Prisons on whether or not the prisoner's term ought to be reduce [sic] upon completion of the program."). *See* FN2 and further discussion of legislative history therein. *LaSorsa*, 2 F.Supp.2d at 554.

not contrary to the statute's clear meaning.

*LaSorsa*, 2 F.Supp.2d at 560. The BOP's interpretation of § 3621(e)(2)(B) abrogating the statutory term "convicted" was not within its discretion and is entitled to no deference by this court.

## *RELIEF*

The court concludes from the foregoing that Guido was improperly denied eligibility for sentence reduction and is entitled to relief. This court does not have the authority to grant release under 18 U.S .C. § 3621(e)(2)(B). Instead, this matter must be referred to the Bureau of Prisons for reconsideration in accordance with this opinion. The BOP must determine whether there is any other basis for denying Guido early release under § 3621(e)(2)(B) or whether release should be granted within its discretion. *Roussos*, 122 F.3d at 164. The respondent is prohibited from denying sentence reduction to Guido solely on the basis of sentence enhancements. Respondent is granted until March 8, 1999 to reconsider Guido's application for early release, and to file a written report with the court as to the outcome of that reconsideration.

**IT IS THEREFORE BY THE COURT ORDERED** that petitioner's Motion objecting to evidence (Doc. 5) is denied, and that petitioner's Motion for Leave to Supplement the Record (Doc. 8) is granted.

**IT IS FURTHER ORDERED** that the BOP reconsider petitioner's request for a sentence reduction without consideration of petitioner's sentencing enhancement, in accordance with this opinion.

**IT IS FURTHER ORDERED** that this court will retain jurisdiction over this matter to insure that petitioner's sentence reduction is promptly and appropriately reconsidered.

**IT IS FURTHER ORDERED** that respondent reconsider Guido for sentence reduction under 18 U.S.C. § 3621(e)(2)(B) on or before March 8, 1999 and file a status report no later than March 8, 1999, informing the court what action has been taken to comply with this order.

**IT IS SO ORDERED.**